**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CECIL KOGER, | DOCKET No. 4:17 CV-2409 |
| Plaintiff, | |
| v. | JUDGE BENITA Y. PEARSON |
| DIRECTOR GARY C. MOHR, et al., | |
| Defendants. | |

**PLAINTIFF CECIL KOGER'S
BRIEF IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................iii

SUMMARY OF ARGUMENT ............................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 3

ARGUMENT AND LAW .................................................................................................. 5

    I.      Motion to Dismiss Standard .................................................................. 5

    II.    Defendants' Motion is Only a Partial Motion to Dismiss ................................... 5

    III.   Mr. Koger Pleads Sufficient Facts Supporting his RLUIPA Claim that is Plausible on its Face................................................................................................ 6

        A.  RLUIPA provides inmates significant protection of their religious exercis 6

        B.  Mr. Koger pleads sufficient facts showing that he has a sincerely held religious belief that he must wear dreadlocks.................................................. 7

        C.  Mr. Koger pleads sufficient facts showing that Defendants' complete ban on dreadlocks substantially burdens his sincerely held religious belief that he must wear dreadlocks................................................................................. 9

        D.  Mr. Koger pleads sufficient facts showing Defendants' enforcement of the complete ban on dreadlocks fails to serve compelling interests................. 10

        E.  Mr. Koger pleads sufficient facts showing Defendants' complete ban on dreadlocks is not the least restrictive means to further prison interests ... 13

            1.  Defendants mischaracterize *Ware v. La. Dep't of Corr.* ............................. 14

            2.  Defendants inaccurately contend that most states ban dreadlocks...... 16

            3.  Defendants cannot show why Ohio is so unique................................... 18

        F.  Mr. Koger merits declratory and injunctive relief........................................ 19

CONCLUSION...................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................... 5

*Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545 (6th Cir. 2007) ........ 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................... 5

*Brandeis Mach. & Supply Corp. v. Barber-Greene Co.*, 503 F.2d 503 (6th Cir. 1974) ........... 20

*Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014) ....................................... 1, 8, 10, 13

*Connection Distrib. Co. v. Reno*, 154 F.3d 281 (6th Cir. 1998) ................................... 21

*Curry v. Bobby*, No. 4:09-CV-614, 2009 WL 5097210 (N.D. Ohio Dec. 16, 2009) ................ 12

*Cutter v. Wilkinson*, 544 U.S. 709 (2005) ................................................................. 8, 11, 19, 20

*Gonzales v. O Centro Espirita Beneficente Unino do Vegetal*, 546 U.S. 418 (2006) ...... 10, 11, 15

*Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014) ............................................................ *passim*

*Holt v. Hobbs*, 135 S. Ct. 853 (2015) ..................................................................... *passim*

*Johnson v. Collins*, No. 3:07-CV-211, 2009 WL 1543811 (N.D. Ohio June 2, 2009) .......... 8, 12

*Knight v. Thompson*, 797 F.3d 934 (11th Cir. 2015) ................................................... 12

*Liberty Coins, LLC v. Goodman*, 748 F.3d 682 (6th Cir. 2014). ....................................... 20, 21

*Love v. Reed*, 216 F.3d 682 (8th Cir. 2000) ............................................................... 10

*McCutcheon v. Federal Election Com'n*, 134 S. Ct. 1434 (2014). .............................. 15

*Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707 (1981) ................ 8

*United States v. Sec'y, Florida Dep't of Corr.*, 828 F.3d 1341 (11th Cir. 2016) ...................... 13

*Ware v. La. Dep't of Corr.*, 866 F.3d 263 (5th Cir. 2017) ......................................... 13, 14, 16, 18

*Ware v. La. Dep't of Corr.*, 138 S. Ct. 1181 (2018) ............................................... 13, 16

*Whittiker v. Deutsche Bank Nat. Tr. Co.*, 605 F. Supp. 2d 914 (N.D. Ohio 2009) .................. 5

*Williams v. Wilkinson*, 645 F. App'x 692 (10th Cir. 2016) ....................................... 6, 7

iii

## Constitutional Provisions

U.S. Const. amend. I ........................................................................................... 4, 5

U.S. Const. amend. XIV ........................................................................................ 5

## Statutes

42 U.S.C. § 2000cc et seq., Religious Land Use and Institutionalized Persons Act ... *passim*

42 U.S.C. § 2000cc-1(a) .................................................................................. 6, 10

42 U.S.C. § 2000cc-5(7)(A) ................................................................................ 8

42 U.S.C. § 2000cc-3(g) .................................................................................... 6

42 U.S.C. § 2000bb-1(b) .................................................................................. 10

## Other Authorities

Conn. Dep't of Corr., Admin. Directive No. 10.8 § 5(D) .................................... 17

Memorandum from TCI Warden LaRose to All Offenders (Nov. 30, 2014) ("No-
   Exemptions Memo") ...................................................................................... *passim*

Md. Comm'n on Corr. Standards, Standards, Compliance Criteria, and Compliance
   Explanations for Adult Community Correctional Facilities § .05(D) ............................ 17

N.M. Corr. Dep't, Inmate Hygiene, No. CD-010100 ............................................ 16

N.M. Corr. Dep't, Inmate Hygiene, No. CD151101 § (J)(1) .................................. 16

New York State Corrections and Community Supervision, Inmate Grooming Standards,
   No. 491418 ...................................................................................................... 17

ODRC, Inmate Hair Care (65-GRM-01) ............................................................. 15

Ohio Admin. Code § 5120-9-25(D) ("Grooming Policy") ............................................. *passim*

Ohio Admin. Code § 5120-9-25(I) ...................................................................... 3

Okla. Dep't of Corr., Religious Services, No. OP-030112 § (V)(A)(1) (May 20, 2015) ...... 17

Ore. Dep't of Corr., Policy 90.2.1, § III(B)(3) ......................................................... 18

David M. Shapiro, *To Seek a Newer World: Prisoners' Rights at the Frontier*, 114 MICH. L. REV. FIRST IMPRESSIONS 124, 125 (2016) ............................................................ 12

U.S. Dep't of Justice, Fed. Bureau of Prisons, Inmate Religious Beliefs and Practices Guide (2002) ............................................................................................................... 8

Wis. Admin. Code DOC § 309.24(2)(a) (2011) ................................................................ 17

## SUMMARY OF ARGUMENT

Plaintiff Cecil Koger's Complaint pleads in great detail facts supporting all elements of his constitutional and statutory claims, demonstrating he is plausibly entitled to relief. The Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc et seq., in particular, "'provide[s] [inmates] very broad protection for religious liberty.'" *Holt v. Hobbs*, 135 S. Ct. 853, 859 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2760 (2014)). The Complaint alleges that Defendant Ohio Department of Rehabilitation and Correction ("ODRC") and Trumbull Correctional Institution ("TCI") officials have violated Koger's religious freedoms by implementing and enforcing Ohio Admin. Code § 5120-9-25(D) ("Grooming Policy")—prohibiting dreadlocks—and the Memorandum from TCI Warden LaRose to All Offenders (Nov. 30, 2014) ("No-Exemptions Memo")—forbidding religious exemptions to the dreadlocks prohibition—which amount to a complete ban, against him.

Specifically, Mr. Koger pleads ample facts in support of his RLUIPA claim, satisfying his initial burden at the motion-to-dismiss stage that (1) he holds sincere religious beliefs under Rastafarianism that he must wear dreadlocks; and (2) Defendants' compete ban on dreadlocks, implemented and enforced through the Grooming Policy and No-Exemptions Memo, led to restrictions on his housing and forcible cutting of his dreadlocks, substantially burdening his religious exercise. Defendants are unable to satisfy their burden under RLUIPA because (1) Defendants can rely only on generalized notions of security and do not offer reasons specific to Koger, undermining any compelling interests in applying the ban to him; and (2) the

1

complete ban on dreadlocks is not the least restrictive approach to ensuring prison security—as evidenced by the majority of prisons allowing for dreadlocks or religious accommodations for dreadlocks—and Defendants lack persuasive reasons for departing less restrictive courses. *Holt*, 135 S. Ct. at 863; *Haight v. Thompson*, 763 F.3d 554, 559-60, 564 (6th Cir. 2014). Defendants' arguments in the face of strict scrutiny are unavailing.

Defendants' arguments are notable for what they fail to mention. First, in seeking to dismiss the Complaint in its entirety, Defendants do not even address Koger's three constitutional claims; they focus entirely on the RLUIPA cause of action. Second, Defendants do not once reference the No-Exemptions Memo. This is a telling omission because Koger alleges throughout the Complaint that Defendants have operated and enforced a complete ban on dreadlocks, not simply through the Grooming Policy, but via the No-Exemptions Memo, which expressly prohibits any religious accommodations, utterly at odds with the language and intent of RLUIPA. Third, Defendants do their utmost to avoid the key holdings of *Holt v. Hobbs* and *Haight v. Thompson*, which require that (a) in order to demonstrate compelling interests, defendants not rely on general or abstract notions of safety, but demonstrate that the application of the challenged practice to the particular plaintiff implicates specific security interests; (b) unfettered deference is not due to Defendants' arguments; and (c) when many states employ a less restrictive approach, Defendants must offer persuasive reasons why they have not done so. This is a showing Defendants cannot make at the motion-to-dismiss stage. In sum, Defendants fail to demonstrate that Koger has not pleaded sufficient facts satisfying all elements of RLUIPA, in addition to his

constitutional claims, showing he is plausibly entitled to relief. Accordingly, this Court should deny Defendants' motion to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

Cecil Koger was an inmate at TCI from 2014 until April of 2018 and remains in ODRC's custody.[1] Compl. ¶¶ 9, 79. He has been a practicing Rastafarian since 2000 and wears his hair in dreadlocks as an outward expression of his religion. Compl. ¶¶ 16, 19. Maintaining dreadlocks is a recognized tenet of Rastafarianism that symbolizes the Lion of Judah from the Bible. Compl. ¶ 19.

Ohio's Grooming Policy states that "[t]he following hairstyles or facial hair are not permitted: Initials, symbols, dyes, multiple parts, hair disproportionately longer in one area than another (excluding natural baldness), weaves, and dreadlocks." Ohio Admin. Code § 5120-9-25(D). On November 30, 2014, former TCI Warden Christopher LaRose distributed the No-Exemptions Memo, addressing hairstyles, including dreadlocks, stating that all offenders should "[b]e advised there are no religious exemptions for this hairstyle." Compl. ¶ 35. The No-Exemptions Memo further authorizes ODRC and TCI personnel to forcibly cut non-compliant inmates' hair. The No-Exemptions Memo is consistent with ODRC policy and remains in effect today. Compl. ¶¶ 36. Combined, the two policies amount to a complete ban that does not permit any religious accommodation for Koger or other Rastafarians seeking to wear dreadlocks.

---

[1] Mr. Koger's counsel learned that he was transferred out of TCI on April 10, 2018.

Upon his transfer to TCI, and throughout his time in ODRC facilities, Koger made numerous requests for religious accommodations of his dreadlocks. Compl. ¶¶ 60-68, 82-83, 96. But despite his multiple efforts, Defendants refused to grant Koger's requests without any individualized assessment, as required by RLUIPA, and instead merely cited the dreadlocks ban. Compl. ¶¶ 62-66, 81, 88, 93-95, 113-115. Koger was also told multiple times that his accommodation requests were not recognized because ODRC did not consider Rastafarianism a religion. Compl. ¶¶ 55-57, 59, 87. As a result, Koger received multiple disciplinary tickets, was placed in segregated housing, and had his dreadlocks forcibly cut five times. Compl. ¶¶ 69-73, 85, 90, 103-10. Koger also made religious accommodation requests for an *ital* diet, fasting for religious holidays, wearing a tam, and for participating in religious gatherings with fellow Rastafarian inmates that were frequently denied. Compl. ¶¶ 25, 27, 59-68.

As the Complaint alleges, any security or safety interests purportedly served by the complete ban on dreadlocks, could be served by less restrictive alternatives. Compl. ¶ 127. For example, in the past, Mr. Koger satisfied safety concerns by running his fingers through his hair. Compl. ¶ 78. Moreover, the majority of jurisdictions impose less restrictive policies than Ohio's complete ban on dreadlocks, either permitting dreadlocks or allowing inmates to seek religious accommodations for dreadlocks. Compl. ¶¶ 2, 28-32, 127, 135.

On November 16, 2017, Koger filed his Complaint against Defendants. In addition to his claim for injunctive and declaratory relief under RLUIPA, Koger seeks such relief and damages, under the Free Exercise Clause and Establishment Clause of

the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment. On March 22, 2018, Defendants filed their motion to dismiss Mr. Koger's Complaint in its entirety. This response follows.

## ARGUMENT AND LAW

### I.    Motion to Dismiss Standard

"To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint must allege enough facts to 'raise a right to relief above the speculative level.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).  At this stage, "the Court must construe the Complaint in the light most favorable to the plaintiff[]," *Whittiker v. Deutsche Bank Nat. Tr. Co.*, 605 F. Supp. 2d 914, 924 (N.D. Ohio 2009), and "take all of the factual allegations in the complaint as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). These facts must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim has facial plausibility when there is enough factual content present to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### II.   Defendants' Motion is Only a Partial Motion to Dismiss

The Court should reject Defendants' motion to dismiss the Complaint in its entirety because Defendants fail to meaningfully address three of Mr. Koger's four claims, and his demand for damages. Mr. Koger's Complaint asserts three constitutional claims under the First and Fourteenth Amendments and seeks monetary damages, alongside his RLUIPA claim and request for injunctive and declaratory relief. Compl.

5

¶¶ 123-49. But Defendants address solely the RLUIPA claim, mentioning the First Amendment only once, and omitting the Fourteenth Amendment entirely. Defs' Br. 3, 19. Mr. Koger alleges very detailed facts supporting his constitutional claims, but Defendants make no effort to demonstrate how these facts fail to state claims upon which relief may be granted. Defendants' motion to dismiss must therefore fail—at the very least—with respect to Koger's three constitutional claims. Yet Defendants' arguments for dismissing Mr. Koger's RLUIPA claim are no more availing.

### III.  Mr. Koger Pleads Sufficient Facts Supporting his RLUIPA Claim that is Plausible on its Face

#### A.  *RLUIPA provides inmates significant protection of their religious exercise.*

In enacting RLUIPA, Congress instructed that it "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted." § 2000cc-3(g); *Holt*, 135 S. Ct. at 859. An inmate pleads "a cognizable claim under RLUIPA" where he shows that a prison policy substantially burdens a practice attributable to a sincerely held religious belief. 42 U.S.C. § 2000cc–1(a); *Holt*, 135 S. Ct. at 860. And a plaintiff will overcome a motion to dismiss once he pleads sufficient facts supporting these elements. *Williams v. Wilkinson*, 645 F. App'x 692, 699 (10th Cir. 2016). Once a plaintiff satisfies this burden, the prison policy may survive only if it (1) serves a compelling governmental interest, and (2) is in in the least restrictive manner. § 2000cc–1(a); *Holt*, 135 S. Ct. at 863 ("Since [inmate] met his burden of showing that the Department's grooming policy substantially burdened his exercise of religion, the burden shifted to the Department"); *Haight*, 763 F.3d at 559-60 (requiring evidentiary record that prison ban furthers

compelling interests in the least restrictive manner). Because Mr. Koger has pleaded facts supporting his evidentiary burden under RLUIPA, and Defendants cannot meet theirs, the Court should deny Defendants' motion to dismiss.

> **B. Mr. Koger pleads sufficient facts showing that he has a sincerely held religious belief that he must wear dreadlocks.**

Mr. Koger alleges that he has been a practicing Rastafarian since 2000. Compl. ¶ 16. One of the requirements of Rastafarianism is that, not only must his hair not be cut, his hair must be allowed to grow and "loc" naturally. Compl. ¶¶ 19-20. On "a motion to dismiss, [the Court] must accept as true the plaintiff's assertion that the request is motivated by his sincerely held religious belief." *Williams*, 645 F. App'x at 699.

Defendants assert that Mr. Koger's claim fails, in part, because, in their view, Rastafarianism only requires that Koger not cut his hair. Defs' Br. 3 n.1, 17. They dismiss his belief as a "cultural preference." Defs' Br. 18. Defendants contend that, because the Nazarite Vow does not mention locked hair, Koger's claim fails because he could simply comb out his dreadlocks. Defs' Br. 18. In myopically latching onto the Nazarite Vow, Defendants misconstrue Koger's claim as solely about length and contend that he has not pleaded facts that Rastafarianism requires wearing locked hair. *Id.* (citing Compl. ¶ 20). Defendants' arguments mischaracterize the facts and miss the law.

Defendants choose to ignore Mr. Koger's pleaded facts, stated in no uncertain terms, that, "[w]earing dreadlocks is a major tenet of Mr. Koger's Rastafarian faith. ***Rastafarians believe that hair must grow and 'lock' naturally, symbolizing the Lion of Judah and the Nazarites in the Bible.*** Dreadlocks embody Rastafarians' commitment to

7

live 'righteously and naturally' and reflect and outward commitment to Jah, or God." Compl. ¶ 19 (emphasis added) (citing U.S. Dep't of Justice, Fed. Bureau of Prisons, Inmate Religious Beliefs and Practices Guide (2002)).

Defendants also ignore the law, including cases they discuss in their own brief, which recognize dreadlocks as a fundamental Rastafarian tenet. *See, e.g., Johnson v. Collins*, No. 3:07-CV-211, 2009 WL 1543811, at *1 (N.D. Ohio June 2, 2009) ("Persons adhering to the Rastafarian tenets wear dreadlocks or interlocked ropes of hair which grow naturally and which are not to be shaved, cut or combed").

Finally, it is not within Defendants' province to conduct biblical exegesis and dictate what a verse requires or what is central to Mr. Koger's faith.[2] *Hobby Lobby*, 134 S. Ct. at 2779 (quoting *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 716 (1981) ("[I]t is not for us to say that their religious beliefs are mistaken or insubstantial. Instead, our 'narrow function . . . in this context is to determine' whether the line drawn reflects 'an honest conviction'"); *Cutter v. Wilkinson*, 544 U.S. 709, 714-15 (2005) (noting that Congress enacted RLUIPA to provide a higher degree of religious protection than the First Amendment, defining "religious exercise" as including "*any exercise of religion*, whether or not compelled by, or central to, a system of religious belief." (quoting § 2000cc-5(7)(A)). Mr. Koger has thus pleaded sufficient facts demonstrating his sincere religious belief that he must wear dreadlocks.

---

[2] Various other biblical verses specifically mention locks. *See, e.g.,* HOLY BIBLE: KING JAMES VERSION, JUDGES 16:13 (2012) ("If thou weavest the seven locks of my head with the web").

8

### C. Mr. Koger pleads sufficient facts showing that Defendants' complete ban on dreadlocks substantially burdens his sincerely held religious belief that he must wear dreadlocks

Mr. Koger pleads sufficient facts demonstrating that Defendants' policies and actions substantially burden his sincerely held religious belief. Forcing an individual to choose between either engaging in conduct prohibited by his religion or punishment satisfies the substantial-burden inquiry. *Holt*, 135 S. Ct. at 862 (holding Arkansas prison system ban on half-inch beards substantially burdened Muslim prisoner by requiring him to trim his beard as prohibited by his religious beliefs or face disciplinary action).

Mr. Koger alleges that Defendants subjected him to disciplinary tickets, segregated housing, and brutal forcible haircuts because he refused to remove his dreadlocks. Compl. ¶¶ 85, 90, 103-11. He made multiple requests for religious accommodations for his dreadlocks, but Defendants denied all of them. Compl. ¶¶ 62-66, 81, 88, 94-95, 113. In denying Koger's requests, TCI officials often cited the No-Exemptions Memo, which states that no religious accommodations for dreadlocks are allowed—undermining the primary intent of RLUIPA to permit accommodations. Compl. ¶¶ 81, 88, 92, 94. Defendants never once reference the No-Exemptions Memo in their brief, a significant omission given its primary role in the complete ban on dreadlocks that substantially burdens Koger's religious exercise. Compl. ¶¶ 35-36, 80-81, 122, 125, 130-31, 133, 138, 144.

Instead, Defendants appear to argue that Mr. Koger suffers no substantial burden because he "may choose to have his dreadlocks combed out rather than forcibly cut." Defs' Br. 10. Defendants again misstate the facts and miss the law. Because

9

Rastafarianism requires dreadlocks, *see supra* III.B, the "choice" hardly alleviates Koger's substantial burden caused by Defendants' enforcement of the complete ban. Moreover, "choosing" "between [dreadlocks] and compromising his religious convictions[ ] is really no choice at all." *Love v. Reed*, 216 F.3d 682, 689–90 (8th Cir. 2000). Mr. Koger has therefore pleaded sufficient facts that show Defendants substantially burden his sincerely held religious beliefs. The burden now shifts to Defendants. § 2000cc-1(a); *Holt*, 135 S. Ct. at 860.

### D. Mr. Koger pleads sufficient facts showing Defendants' enforcement of the complete ban on dreadlocks fails to serve compelling interests

Mr. Koger pleads sufficient facts indicating that Defendants have failed to demonstrate why the complete ban on dreadlocks was and is applied against him. They cannot, therefore, demonstrate a compelling interest supporting the dreadlocks ban.

Once the plaintiff satisfies his burden under RLUIPA, Defendant prison officials must "demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Holt*, 135 S. Ct. at 863 (quoting *Hobby Lobby*, 134 S. Ct. at 2779 (quoting *Gonzales v. O Centro Espirita Beneficente Unino do Vegetal*, 546 U.S. 418, 430-31 (2006) (quoting 42 U.S.C. § 2000bb-1(b))) (noting that while stopping contraband may be a compelling interest in general, it does not follow that every restriction furthers that interest and that the specific prohibition of half-inch beards does not further a prison's interest in getting rid of contraband). The Sixth Circuit similarly underscores that "broad generalities about the government's interest

unmoored from the particularities of *this* case will not suffice." *Haight*, 763 F.3d at 564 (emphasis in original) (RLUIPA requires Kentucky prison officials to show "why a sweat lodge presents a compelling security problem as to 'that' particular group of inmates—the inmates who made the request and who filed this lawsuit."). Accordingly, any purported compelling interests must be assessed on a case-by-case, inmate-by-inmate basis. *Holt*, 135 S.Ct. at 863; *O Centro*, 546 U.S. at 436 (noting the "feasibility of case-by-case consideration of religious exemptions to generally applicable rules." (citing *Cutter*, 544 U.S. 709)).

Defendants only point to generalized notions of security and safety issues that dreadlocks implicate. Defs' Br. 2-3, 13, 17, 19. They do not, however—and never have, as the Complaint makes starkly clear—indicate how Koger's dreadlocks present a security problem. Compl. ¶ 59. Defendants claim that they need only to show "potential danger, not actual danger." Defs' Br. 17. But broad, abstract dangers will not suffice. *Holt*, 135 S. Ct. at 863; *Haight*, 763 F.3d at 562-63. "RLUIPA requires more," *Haight*, 763 F.3d at 562, specifically, a "'more focused inquiry,'" *Holt*, 135 S. Ct. at 863 (citation omitted), which explains why Koger's dreadlocks are, in fact, a security threat.

Particularly at the motion to dismiss stage, the Court's deference to security assertions is not unmitigated. Defs' Br. 9, 12. Respect for prison officials' expertise "does not justify the abdication of the responsibility, conferred by Congress, to apply RLUIPA's rigorous standard." *Holt*, 135 S.Ct. at 864. As the Supreme Court instructs, "RLUIPA does not permit such unquestioning deference." *Id*.

11

This Court should also skeptically consider opinions (many of which Defendants cite, Defs' Br. 13-17) that predate *Holt* and do not assess (1) how a particular inmate's requested accommodation to a restriction would implicate prison security, and (2) the viability of other jurisdictions' less restrictive approaches. *Holt*, 135 S. Ct. at 863-64. *See* David M. Shapiro, *To Seek a Newer World: Prisoners' Rights at the Frontier*, 114 MICH. L. REV. FIRST IMPRESSIONS 124, 125 (2016) ("*Holt* . . . upended a vast body of lower court precedent."). Moreover, in opinions such as *Johnson*, 2009 WL 1543811 and *Curry v. Bobby*, No. 4:09-CV-614, 2009 WL 5097210 (N.D. Ohio Dec. 16, 2009), on which Defendants rely, the courts did not address the compelling interests implicated by the No-Exemptions Memo, but only addressed the Grooming Policy. It is the combination of the two policies that erects a complete ban on dreadlocks and burdens Koger's religious exercise. Compl. ¶¶ 32-26, 81, 88, 92, 94.

Defendants' reliance on *Knight v. Thompson*, 797 F.3d 934 (11th Cir. 2015) is also misplaced. Defs' Br. 4. There, the Eleventh Circuit held that a complete ban on hair length furthered compelling interests *only* upon a full record, including witness testimony and a bench trial—well beyond the pleadings stage. *Knight*, 797 F.3d at 944-45. No such record exists here. And the Complaint's facts sufficiently demonstrate that Defendants failed to assess the particular threat Koger's dreadlocks pose to security. However, even if there were compelling interests supporting the ban, Koger pleads more than enough facts showing the ban is not the least restrictive means of furthering these interests.

### E.  Mr. Koger pleads sufficient facts showing Defendants' Complete ban on dreadlocks is not the least restrictive means to further prison interests

As set forth in the Complaint, the vast majority of jurisdictions either permit inmates to wear dreadlocks outright or afford them the opportunity to seek religious accommodations for dreadlocks. Compl. ¶¶ 2, 28-32, 127, 135; *Ware v. La. Dep't of Corr.*, 866 F.3d 263, 273 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1181 (2018). Because Defendants' policies amount to a complete ban on dreadlocks, permitting no religious accommodations, Defendants do not employ the least restrictive means. And nothing in the Complaint permits an inference justifying Defendants' deviation from less restrictive alternatives.

Under RLUIPA, "'[t]he least-restrictive-means standard is exceptionally demanding,' requiring the government to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y].'" *Holt*, 135 S.Ct. at 864 (alterations in original) (quoting *Hobby Lobby*, 134 S. Ct. at 2780). In determining whether a prison's denial of a religious accommodation is the least restrictive means for furthering a prison's interest, a court should compare the policy with the more lenient approaches of other jurisdictions' prisons. "[W]hen so many prisons offer an accommodation, a prison must, at a minimum, offer persuasive reasons why it believes that it must take a different course." *Holt*, 135 S. Ct. at 866; *United States v. Sec'y, Florida Dep't of Corr.*, 828 F.3d 1341, 1348–49 (11th Cir. 2016) (citing *Holt*, 135 S. Ct. at 866) (finding that Florida's denial of a kosher diet to inmates was not the least restrictive means when the Federal Bureau of Prisons

and other state prison systems provided kosher meals); *Haight*, 763 F.3d at 563 (holding prison officials' failure to study other states' accommodations of Native American sweat lodges and potential security risks undermined complete prohibition's compelling interests). This is a showing Defendants cannot satisfy.

1.  Defendants mischaracterize *Ware v. La. Dep't of Corr.*

The Fifth Circuit recently held that, on facts very similar to those alleged here, the Louisiana Department of Corrections ("DOC") prohibition on dreadlocks and ban on religious exemptions were not the least restrictive means for furthering its compelling interests. *Ware,* 866 F.3d at 274 (holding dreadlocks ban violates RLUIPA and enjoining enforcement against Rastafarian inmate wearing dreadlocks). In seeking to discredit the appellate court opinion most relevant to this matter, Defendants mischaracterize *Ware* as predicated on a "faulty premise" that most states permit dreadlocks. Defs' Br. 3. But that is not what the Fifth Circuit considered when it struck down the Louisiana DOC ban on dreadlocks. Rather, the court observed, "39 other jurisdictions (including the U.S. Bureau of Prisons)" implement prison grooming policies "which would either outright allow [a Rastafarian prisoner] to have dreadlocks ***or afford him the opportunity to apply for a religious accommodation that would allow dreadlocks***." *Ware*, 866 F.3d at 273 (emphasis added). The Fifth Circuit did not claim that most jurisdictions always allow inmates to wear dreadlocks. Rather, it found that most jurisdictions would ***at least*** permit an inmate to seek religious accommodations for dreadlocks. *Id.* Prisons might ultimately decide that security

14

interests trump the particular inmate's religious request. But to impose a complete ban is far more restrictive.

This distinction seems lost on Defendants. The problem with Defendants' complete ban—as with Louisiana's—is that not only does it prohibit dreadlocks, but it denies inmates even the opportunity to seek religious accommodations for wearing dreadlocks. Compl. ¶ ¶ 35-36 (describing No-Exemptions Memo's effects coupled with Grooming Policy). In fact, the No-Exemptions Memo also undercuts ODRC's purported "freedom in personal grooming" policy, explicitly prohibiting any exemptions for dreadlocks. Defs' Br. 9 (discussing ODRC, Inmate Hair Care (65-GRM-01)).

Defendants' complete ban also undermines the very purpose of RLUIPA. RLUIPA "plainly contemplates that courts would recognize exceptions—that is how the law works." *O Centro,* 546 U.S. at 434. *See also Haight*, 763 F.3d at 562 ("Keep in mind that the idea behind offering statutory protection for faith-based practices is to make accommodations—exceptions—for individuals who believe they must do certain things because their faith requires it."). There is a great difference between a complete ban and regulation. *See McCutcheon v. Federal Election Com'n*, 134 S. Ct. 1434, 1439 (2014).

By foreclosing any possibility of religious exemptions to the Grooming Policy, Compl. ¶¶ 35-36, Defendants deny inmates the exact legal protections that RLUIPA aims to safeguard. Under a complete ban, the die is already cast, the game is called before it is even played. And it is what renders Mr. Koger's RLUIPA claim plausible and proves fatal to Defendants' motion to dismiss.

2.   Defendants inaccurately contend that most states ban dreadlocks

In its pursuit to discredit *Ware* and rehabilitate Ohio's outlier complete ban on dreadlocks, Defendants canvas other jurisdictions' relevant regulations and policies. Defs' Br. 4-9. But their compilation is self-defeating and only supports Koger's claim.

Defendants seek refuge in the few states such as Alabama that have complete bans on dreadlocks—prohibiting any religious accommodations—for inmates. Defs' Br. 4. This is a narrow lot.  And they do not compare favorably in content or in number to the numerous and less restrictive jurisdictions' policies on dreadlocks and religious accommodations. Compl. ¶ 28; *Ware*, 866 F.3d at 273.[3]

Even among the few states that Defendants claim prohibit dreadlocks, it is far from clear how many of them explicitly prohibit religious accommodations as does Ohio in the form of its No-Exemptions Memo. Defs' Br. 4-6. In addition, Defendants characterize eight states as banning dreadlocks, without offering any textual support. Defs' Br. 4. To the contrary, several of these states, as with the majority of jurisdictions, do not reference dreadlocks, let alone prohibit them or refuse religious accommodation. New Mexico, for example, provides that inmates may have "[f]reedom in personal grooming" and may "request an exception to the grooming standards" based on "a sincerely held religious belief which prohibits the inmate from cutting his hair."[4]

---

[3] That seven attorneys general appealed *Ware* is not of "[c]ritical[ ]" import. Defs' Br. 4. More significant is that the Supreme Court denied certiorari. 138 S. Ct. 1181. Moreover, the *Ware* opinion is controlling law for Louisiana, Mississippi, and Texas. And its reasoning is sound, highly persuasive and should be considered by this Court.

[4] N.M. Corr. Dep't, Inmate Hygiene, Nos. CD-010100, CD-18000 § (B) (Mar. 09, 2015); N.M. Corr. Dep't, Inmate Hygiene, No. CD151101 § (J)(1) (Mar. 09, 2015). Among several of the states cited by Defendants, Mr. Koger's counsel located religious accommodation policies relating to grooming but no complete bans

16

Undersigned counsel could not locate any New Mexico policy akin to Ohio's No-Exemption Memo that bans dreadlocks without exception.

Defendant also appear to argue that because many jurisdictions referenced in *Ware* limit hairstyles based on health or safety considerations, Ohio's complete ban on dreadlocks is no different. Defs' Br. 6. This inference is highly suspect. Defendants assume that dreadlocks cannot ever satisfy security and health concerns. But again, Defendants fundamentally confuse the difference between a complete ban and a regulation that appropriately balances security and hygiene concerns with individual religious liberty interests. Under the vast majority of regulations that even Defendants cite, an inmate might or might not be permitted to wear dreadlocks, depending on the individual circumstances. Defs' Br. 6-9. In fact, Defendants even cite to jurisdictions that explicitly do permit inmates to wear dreadlocks. Defs' Br. 6-7. *See*, *e.g.*, New York State Corrections and Community Supervision, Inmate Grooming Standards, No. 491418 ("The dreadlock hairstyle is allowed. When worn, dreadlocks must extend naturally from the scalp and may not be woven, twisted, or braided together forming pockets that cannot be effectively searched."). However, Ohio's complete ban never allows for the possibility of exception. Based on the facts and law cited in Koger's Complaint, and by Defendants in their brief, Ohio's complete ban on dreadlocks is plainly not the least restrictive means for furthering security or safety interests.

---

on dreadlocks similar to those of Ohio and Alabama. *See*, *e.g.*, Conn. Dep't of Corr., Admin. Directive No. 10.8 § 5(D); Md. Comm'n on Corr. Standards, Standards, Compliance Criteria, and Compliance Explanations for Adult Community Correctional Facilities § .05(D); Okla. Dep't of Corr., Religious Services, No. OP-030112 § (V)(A)(1) (May 20, 2015); Wis. Admin. Code DOC § 309.24(2)(a) (2011).

### 3.  Defendants cannot show why Ohio is so unique

Defendants lack persuasive reasons why Ohio's prisons require greater restrictions than the vast majority of the country. *Holt*, 135 S. Ct. at 866; *Ware*, 866 F.3d at 274. Defendants argue that ODRC is not sufficiently staffed to employ officers to constantly monitor the locking of inmates' hair. Defs' Br. 14. Yet most other jurisdictions have seen fit to address this fairly generic concern without resorting to complete bans that deny any and all religious accommodations for wearing dreadlocks. *Ware*, 866 F.3d at 273. Nor should such arguments prevail at the motion-to-dismiss stage. Other jurisdictions also have been able to overcome the purported dangers of individually searching inmates' dreadlocks. Defs' Br. 14-15. Oregon, for example, delineates the steps staff must take in searching dreadlocks, including first using a hand-held metal detector and then their hands. Ore. Dep't of Corr., Policy 90.2.1, § III(B)(3). Only if contraband is found, and the inmate refuses to cut the specific portion of his hair, may authorities cut that area. *Id.*

Even "at the summary-judgment phase of the case . . . in the absence of evidence demonstrating (as opposed to lawyer arguments speculating) that the prison considered and rejected alternatives more tailored to its security interest, the prison's prohibition cannot withstand this aspect of strict scrutiny." *Haight*, 763 F.3d at 564 (citation omitted). At least at this stage of litigation, Mr. Koger has pleaded, and Defendants do not refute, facts showing that there is nothing so "unique" about Ohio prisons or the issues they face that explains their departure from the majority of prison policies and practices. *Ware*, 866 F.3d at 273-74. As a result, Mr. Koger has pleaded sufficient facts

demonstrating Defendants' complete ban is not the least restrictive means of furthering security and safety interests. Therefore, Mr. Koger asserts a plausible claim under RLUIPA entitling him to injunctive relief.

### F. Mr. Koger merits declaratory and injunctive relief

Mr. Koger alleges sufficient facts to demonstrate that he qualifies for injunctive relief, namely that, (1) he is likely to succeed on the merits of his claim; (2) Defendants' policies have resulted, and will continue to result, in irreparable injury; (3) injunctive relief will not substantially harm third parties; and (4) injunctive relief is in the public interest. *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014).

First, Mr. Koger is likely to succeed on the merits, particularly on his RLUIPA and First Amendment claims. *See id.* at 690 ("In the context of a First Amendment claim, the balancing of these factors is skewed toward an emphasis on the first factor."); *Cutter*, 544 U.S. at 714-15 (explaining RLUIPA was intended to provide more religious protection than Free Exercise Clause). In order to show likelihood of success, Koger need only raise "questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." *Brandeis Mach. & Supply Corp. v. Barber-Greene Co.*, 503 F.2d 503, 505 (6th Cir. 1974). As set forth above, Koger pleads sufficient facts demonstrating he has met his RLUIA burden and certainly calls into question whether Defendants can meet their burden. At a minimum, the Court should not rule at the pleadings stage that Defendants have satisfied their burden.

Second, Mr. Koger pleads sufficient facts demonstrating that he has suffered and continues to suffer irreparable injury. The violation of RLUIPA and "loss of First Amendment freedoms . . . unquestionably constitute[ ] irreparable injury." *Id.* (quoting *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)) (citation omitted). Third, affording Mr. Koger relief is in the public interest. RLUIPA was intended "[t]o secure redress for inmates who encountered undue barriers to their religious observances," *Cutter*, 544 U.S. at 716-17, precisely what Koger alleges. Finally, the prevalence of less restrictive policies on dreadlocks demonstrates that the relief sought will not substantially harm third parties. Accordingly, Mr. Koger has alleged sufficient facts to defeat Defendants' motion to dismiss as to the form of relief requested.

## CONCLUSION

For the foregoing reasons, Mr. Koger respectfully requests that the Court deny Defendants' motion to dismiss and permit his case to proceed.

Respectfully submitted,

Anthony Cirranello, Jr.
Lindsay Cook
Valerie Villacampa
*Legal Interns*

/s/ Avidan Y. Cover_____
Avidan Y. Cover (0087534)
CASE WESTERN RESERVE UNIVERSITY
SCHOOL OF LAW
MILTON A. KRAMER LAW CLINIC CENTER
11075 East Boulevard
Cleveland, Ohio 44106
(216) 368-2766
Avidan.cover@case.edu
*Attorney and Legal Interns for Plaintiff Cecil Koger*

DATED: April 21, 2018

## **PROOF OF SERVICE**

I hereby state that on this 21st day of April, 2018, notice of this filing was sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ Avidan Y. Cover
Avidan Y. Cover
*Attorney for Plaintiff Cecil Koger*

21