# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **CECIL KOGER,** | ) | |
| | ) | **Case No. 4:17-CV-02409** |
| **Plaintiff,** | ) | |
| | ) | **Judge Benita Y. Pearson** |
| **v.** | ) | |
| | ) | |
| **DIRECTOR GARY MOHR, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, Cecil Koger, files this Opposition to Defendants' Motion for

Summary Judgment (ECF No. 45)(Hereinafter, "Defts.' MSJ"). A memorandum of

law is attached.

Respectfully submitted,

/s/ John Wrench
*Certified Legal Intern**
/s/ Andrew C. Geronimo
Andrew C. Geronimo (#0086630)
*Supervising Attorney*
MILTON A. KRAMER LAW CLINIC CENTER
CASE WESTERN RESERVE UNIVERSITY
SCHOOL OF LAW
11075 East Boulevard
Cleveland, Ohio  44106
Telephone: 216.368.2766
Facsimile: 216.368.5137
Email: andrew.geronimo@case.edu
*Attorneys for Plaintiff*

---

* Plaintiff filed a Motion for Leave to Appear on April 3, 2019. (ECF No. 49). Counsel also wishes to thank Zora Raglow-Defranco, a first-year law student at Case Western Reserve University School of Law, for her contributions to this brief.

## MEMORANDUM IN SUPPORT

### I.    Introduction

The Ohio Department of Rehabilitation and Corrections ("ODRC"), and Defendants Mohr, Davis, Bobby, Marquis, Ishee, Bracy, Kostenko, and Bowen refuse to recognize and accommodate the peaceful religious practices of Rastafarianism. In so doing, they are violating The Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-2, *et seq.*, and the First and Fourteenth Amendments to the United States Constitution. ODRC has faith-specific policies memorializing the central tenets of various faiths—Protestant, Jewish, Muslim, Roman Catholic-Orthodox, Jehovah Witness, Buddhist, Native American, Wiccan, and Asatru—but no such guidance on Rastafarianism. Mr. Koger has continually tried to educate ODRC about his religious beliefs, and has repeatedly offered to submit to additional security measures in order to comply with the tenets of his religion. Instead, ODRC and Defendants ordered the force-cut of Mr. Koger's hair in desecration of his religious vows *on his religion's holiest day*.

ODRC's administrative regulations, before and after revisions (*See* <u>Defts.'</u> <u>MSJ</u>, at <u>Exhibit C</u>), unlawfully violate Mr. Koger's rights. Defendants' policies and actions demonstrate why this Court should intervene and require ODRC to meet their statutory and constitutional obligations to Mr. Koger and the other Rastafarian inmates in ODRC institutions.  Defendants have not met their burden to show that there are no factual issues for trial and they are entitled to judgment as a matter of law. Their only support for their contention that their policies are necessary to violate Mr. Koger's religious beliefs are two conclusory affidavits, and

1

evidence cited in an unpublished Sixth Circuit case from 1997, examining evidence submitted to a trial court in 1996, over twenty years ago.[1]

Mr. Koger has established that his sincerely held religious beliefs that require him to fast, commune with other believers, and grow his hair naturally, and that ODRC's policies substantially burden those practices. Defendants have failed to meet their burden to prove that that ODRC's current policy requiring dreadlocks to be less than one-half-inch in diameter is the least restrictive means of achieving a compelling interest. Moreover, Defendants cut Mr. Koger's hair on his religion's holiest day with full knowledge that Mr. Koger's religious beliefs mandated that cutting his hair would "sever[] … [his] connection with the most high," and "to cut a Rastafarian's locks is a desecration." Koger Aff. at ¶ 28.

## II.    Law and Argument

### a.    Summary Judgment Standard

Summary judgment is appropriate when there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (*citing* Fed. R. Civ. P. 56(c)). Defendants, as the moving parties, bear the burden of demonstrating the absence of any genuine issues of material fact. *Celotex*, 477 U.S. at 323. A fact is "material" if its resolution "will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). "The evidence, all facts, and any inferences that may

---

[1] Any evidence presented to the various trial courts in *Williams v. Wilkinson*, Case No. 96-3715 (6th Cir. 1997), even if recent enough to be reliable, is outside the scope of Fed.R.Civ.P. 56(c).

permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party." *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment should not be granted unless a party who bears the burden of proof at trial fails to establish "the existence of an element essential to that party's case." *Tolton v. Am. Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995). Defendants cannot rely upon conclusory and speculative affidavits to support their motion for summary judgment. Civil Rule 56(c)(4) requires affidavits filed to support or oppose a motion to "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4). Documents that fail to do so may be disregarded on summary judgment. *See id*. 56(e). *Id*. 56(c)(4); also Federal Practice and Procedure, Civil 2d § 2738 (1983)(Courts have the discretion to strike conclusory and speculative affidavits). Defendants have not met this burden on any of Mr. Koger's claims, and their motion should be denied.

> **b.     ODRC's policies violate RLUIPA**

"Congress enacted RLUIPA . . . in order to provide very broad protection for religious liberty." *Holt v. Hobbes*, 135 S.Ct. 853 (2015). To that end, RLUIPA "prohibits state and local governments from placing a 'substantial burden' on the 'religious exercise' of any inmate unless they establish that the burden furthers a 'compelling government interest' and does so in the 'least restrictive' way." 42 U.S.C. § 1000cc-1; *See also Haight v. Thompson*, 763 F.3d 554, 558 (6th Cir. 2014).

RLUIPA requires the following burden-shifting analysis: First, an inmate must demonstrate that a "prison policy substantially burdens a religious practice." 42 U.S.C. § 2000cc-2(b) ("If a plaintiff produces prima facie evidence to support a

claim alleging a violation of [the First Amendment or RLUIPA], the government shall bear the burden of persuasion on any element of the claim …"); *see also Haight*, 763 F.3d at 560. Once an inmate demonstrates that the government is burdening his religious exercise, the government bears the burden to justify its policy is the least restrictive means of achieving a compelling interest. 42 U.S.C. § 2000cc-2. *See also Haight* at 560 ("The prison policy survives only if it serves a compelling governmental interest in the least restrictive way.").

Mr. Koger has established that wearing dreadlocks is the result of his sincerely held religious belief. More importantly, Defendants have failed to establish that the Policy furthers a compelling government interest in the least restrictive way.

### 1. Mr. Koger is a Rastafarian.

Defendants' Motion relies on their (false) factual assertion that Mr. Koger is Muslim—when viewing the evidence Defendants submit in full context, it is hard to imagine how ODRC can make this assertion in good faith. Cecil Koger is a Rastafarian and has been a Rastafarian continuously for the past 21 years. Mr. Koger has submitted a Request for Religious Accommodation form at every ODRC facility he's ever been incarcerated in. Defendants attempt to support their claim with a form Mr. Koger submitted to ODRC identifying himself as Muslim in order to fast during Ramadan. Defts.' MSJ at 2. However, Defendants fail to mention that Mr. Koger has explained to ODRC the reason he fills out this form is because ODRC will not allow him to fast as a Rastafarian. *Id*. at ¶ 14. In 2016, Mr. Koger submitted a Request for Religious Accommodation to ODRC, which stated in part,

4

…[w]hy does a Rasta like myself not able to observe or fast, I have to
fast with the Muslims during Ramadan and observe in church on
Sundays with the Christians. If I need assistance from T.C.I. as to my
fasting and observance I have to get it with other religious observances
not Rastafari. This is clearly discriminatory …

Koger Aff. at ¶ 15.

Even if Defendants had a legitimate reason to doubt the sincerity of Mr.

Koger's religious beliefs, the Sixth Circuit has held that—absent a developed

record—summary judgment is inappropriate where the sincerity of an inmate's

religious beliefs is challenged in a RLUIPA claim. In *Haight*, a group of Native

American inmates brought claims under RLUIPA after prison officials denied the

inmates access to traditional food used in an annual religious event. Overturning

the district court's order granting summary judgment for the prison, the Sixth

Circuit noted that,

To the extent the prison officials think that the three inmates are faking
it when it comes to their Native American religious beliefs or making it
up when it comes to their belief that these foods items are imperative
for a powwow, they should feel free to challenge that sincerity. With a
properly developed record (including testimony from the inmates,
reference to religious texts, etc), they may ask the courts to filter out
insincere requests. But we have no such record here . . .

763 F.3d 554 at 566-67.[2] Although Defendants doubt the sincerity of Mr. Koger's

religious beliefs, Defendants did not seek to depose Mr. Koger to test those beliefs.

---

[2] *See also E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto
Rico*, 279 F.3d 49, 56 (1st Cir. 2002) ("Credibility issues such as the sincerity of [a] religious belief
are quintessential fact questions . . . they ordinarily should be reserved for the factfinder at trial,
not for the court at summary judgment.") (citation omitted); *see also Patrick v. LeFevre*, 745 F.2d
153 (2d Cir. 1984) (holding that "subjective issues of sincerity of belief and the perceived nature
of that belief must be confronted squarely . . . these factual issues cannot be resolved without
the benefit of observing [the inmate's] demeanor during direct and cross-examination to

ODRC has extensive knowledge of Mr. Koger's multiple requests for religious accommodation, filed over a number of years for access to Rastafarian religious texts, dietary accommodations, and exemptions from the grooming policies. Mr. Koger is confined in an ODRC facility, and has multiple interactions every day with ODRC staff where he demonstrates or asserts his Rastafarianism. <u>Koger Aff.</u> at ¶¶ 5, 15, 18.

ODRC's callous assertion that Mr. Koger is a Muslim underscores the central issue in this lawsuit: ODRC makes numerous accommodations for other religions, but refuses to acknowledge Mr. Koger's religion. And in trying to justify their conduct, Defendants submitted a partial accommodation form, omitting the portion where Mr. Koger explains that he submits the form as a Muslim *because ODRC will not allow him to fast as a Rastafarian*. There is no genuine issue of material fact— Cecil Koger is a Rastafarian.

### 2. ODRC's policies do not recognize Rastafarians.

Mr. Koger is a Nyabinghi Rastafarian. <u>Koger Aff.</u> at 4. He has taken a solemn oath, known as a Nazarite Vow, to adhere strictly to the tenets of his religion. Mr. Koger observes Rastafarian holy days, and his religion requires him to gather with other Rastafarians for grounding and communion ceremonies on those days. Mr.

---

facilitate a credibility evaluation."); *see also Moussazadeh v. Texas Dept. of Criminal Justice,* 703 F.3d 781 (5th Cir. 2012) ("[t]he determination of a substantial burden in general is fact specific and requires a case-by-case analysis . . . [t]his is doubly true regarding sincerity."); *see also Koger v. Bryan*, 523 F.3d 789, 797 (7th Cir. 2008)[2] (overturning grant of summary judgment on RLUIPA claim where evidence did not support claim that inmate's religious beliefs were sincere); *see Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 983 (8th Cir. 2004) (noting that the sincerity of a religious belief is a "factual determination" that cannot be quickly dismissed "on summary judgment by concluding that those beliefs are not genuine.").

Koger's religious beliefs require him to adhere to a strict *ital* diet of organic unprocessed foods and fast one-hundred-eighty days per year. Mr. Koger's Rastafarianism teaches him that his hair is his strength and personal identity, and requires him to grow his hair naturally, without manipulating it or cutting it. Id. ODRC's policies prohibit him from growing his hair naturally, and do not permit him to fast according to his beliefs. Being forced to choose between violating religious beliefs and facing discipline in the prison context is a substantial burden. *Holt*, 135 S.Ct. at 862.

### 3. Defendants have not met their burden to demonstrate that there is a compelling interest in substantially burdening Mr. Koger's religious beliefs.

ODRC claims it has "a security interest in the searchability of an inmate's hair," and "maintaining safety and security." Defts.' MSJ at 8, 18. RLUIPA requires a "rigorous standard" to evaluate a compelling interest, and "does not permit [] unquestioning deference" to a prison's purported interest. *Holt* at 864. Moreover, RLUIPA "does not permit … unquestioning deference" to penological interests, and "[m]akes clear that it is the obligation of the courts to consider whether exceptions are required under the test set forth by Congress." *Id.*, citing *Gonzales v. O Centro Espírita Beneficente Uniõ do Vegetal*, 546 U.S. 418, 434. That test "requires [a prison] not merely to explain why it denied the exemption, but to prove that denying the exemption is the least restrictive means of furthering a compelling governmental interest." *Id.* In other words, ODRC may not rely upon "broadly formulated" interests to satisfy RLUIPA, but must conduct a "more focused inquiry" which "requires the Government to demonstrate that the compelling interest test is

7

satisfied through application of the challenged law to … the particular claimant whose sincere exercise of religion is being substantially burdened." *See id*. at 863, citing *Burnwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726 (2014). ODRC must not only prove why it bans dreadlocks of a certain size generally, but why it is banning Mr. Koger's dreadlocks specifically.

Defendants' evidentiary support for their Motion for Summary Judgment—the Affidavit of Brian Wittrup, ODRC's Chief of the Bureau of Classification and Reception—is not sufficient to meet this burden. Mr. Wittrup's testimony regarding the purported unsearchability of dreadlocks generally and the danger that Mr. Koger's dreadlocks pose specifically does not rise above mere speculation Mr. Wittrup readily admits that "what constitutes searchable hair is a highly discretionary matter of judgment." Wittrup Aff. at ¶ 5. Mr. Wittrup says that ODRC considered "various objective criteria" to determine that dreadlocks over one-half-inch thick "would be considered unsearchable." Id. at ¶¶ 6-9. Though Mr. Wittrup's job duties include "oversight of ODRC's classification policies and consultation regarding policies implicating ODRC's institutional safety and security concerns," he was unable to present any specific evidence of any individual who ever concealed any dangerous contraband in their hair. Id.

Mr. Wittrup's affidavit does not state any specific reason why ODRC is concerned that his hair presents a security risk. Mr. Koger is has a Level 2 security classification—the second-lowest of ODRC's five levels of security risks. Koger Aff. at 33. ODRC admits that its staff has never found contraband in Mr. Koger's hair:

**REQUEST FOR ADMISSION No. 17:** Admit that ODRC has no record indicating that any ODRC employee or contractor has ever found contraband hidden in Mr. Koger's Dreadlocks.

**RESPONSE:**

Admit.

ODRC's Responses to Plaintiff's Requests for Admission at 4 (Exhibit C).

**INTERROGATORY No. 14:** Identify any contraband that Mr. Koger has had (including contraband concealed in his Dreadlocks) while under ODRC control or supervision.

**RESPONSE:**  Mr. Koger has been issued 24 conduct reports for contraband.  To date, although no contraband has been detected in Mr. Koger's dreadlocks, they could not be effectively searched.

ODRC's Responses to Plaintiff's Discovery Requests at 10-11 (Exhibit B). Mr. Koger sought discovery on all instances of inmates hiding contraband in their hair over the past five years, and ODRC could not specifically identify any:

**DOCUMENT REQUEST No. 12:** Produce reports for all occurrences of contraband found in Dreadlocks for the last five years at ODRC facilities.

**RESPONSE: Objection.** This request is vague, ambiguous, overly broad, unlimited as to place, burdensome, and is not relevant to the claim or defense of any party. Without waiving the objection, this information is not tracked by Central Office.  Indeed, the only way to look this up is to review every inmate's conduct reports by name and number over the past 5 years to determine whether any disposition was documented.

Id. at 15. There is no evidence that ODRC staff has been unable to effectively search dreadlocks. Defendants claim that they cannot "prove a negative" regarding the propensity for ODRC inmates to hide dangerous items in their dreadlocks (See

Defts.' MSJ at FN8), this argument is disingenuous for several reasons. Yet, Mr. Koger has had dreadlocks for many years in ODRC facilities. Multiple other inmates at various ODRC have dreadlocks currently, or have worn them in the past, and ODRC still cannot point to a single instance of an inmate hiding dangerous contraband in dreadlocked hair, or why dreadlocks are *actually* unsearchable rather than "*considered unsearchable.*" *See* <u>Wittrup Aff</u>. at ¶9.

> **4.  ODRC has not met its burden to demonstrate that a one-half-inch limit on dreadlocks is the least restrictive means of a secure prison.**

Even if ODRC could prove dreadlocks are a security risk, the ARs are not sufficiently tailored to meet the alleged security threat. "Courts must hold prisons to their statutory burden [under RLUIPA], and they must not assume a plausible, less restrictive alternative would be ineffective." *Holt* at 866, citing *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 824 (2000). ODRC fails to justify its policies in light of the "exceptionally demanding" tailoring required under RLUIPA. *See Holt*, 135 S.Ct. 853, quoting *Burnwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 728 (2014). ODRC is required to "sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y]." *Id.*

Defendants cannot identify any specific evidence to support the premise that ODRC's one-half-inch limit on dreadlock circumference is the least restrictive way of achieving its goal of a safer institution. ODRC's supporting affidavit states:

> If the inmate's dreadlocks exceed the 1/2 inch thickness limitation, the hair would be considered unsearchable. When hair exceeds 1/2 inch thickness, small objects such as paperclips, handcuff picks (metal and plastic), razor blades, handcuff keys, non-metal thin piercing weapons, are difficult or

10

nearly impossible to detect with metal detectors and are unlikely to fall out during a search. Discovery of such objects through the manual search of hair also risks injury to the corrections officer conducting the search.

<u>Wittrup Aff</u>. at ¶9. Without specific facts to support these assertions, ODRC's claims are too conclusory and speculative to meet the rigorous standard set forth by RLUIPA.

Defendants do not offer any testimony that there is no other less-restrictive way to search Mr. Koger's dreadlocks. There is no assertion that metal detectors are the only way to effectively search an inmate's hair, or that there is no other technology that would allow the prison to search without cutting Mr. Koger's hair. Moreover, ODRC rarely searches Mr. Koger's hair, and Mr. Koger has often demanded a search of his hair rather than being subjected to the indignities of a force-cut in violation of his religious beliefs. <u>Koger Aff</u>. at A-5 ("no one has accused me of having anything in [my hair], no one has asked to search it!"). Mr. Wittrup also states, "[m]anual searches of inmate hair increase the tension between inmates and corrections officials because it places a corrections official in very close proximity to the inmate … [and] increases the ability of an inmate to harm the official conducting the search." *Id*. at ¶ 13. There is no evidence why that "tension" could not be alleviated with additional staff or other security measures during the searching process.

ODRC has searched Mr. Koger's dreadlocks numerous times, and Mr. Koger welcomes any method ODRC wishes to use short of cutting or fully combing his hair: metal detector, manual searching while restrained or with additional

11

protective equipment, or with newer technologies in use at jails, courthouses, airports, and arenas all over the country.[3]

### c. Defendants' action violate the First and Fourteenth Amendments of the United States Constitution.

A plaintiff is entitled to relief under 42 U.S.C. § 1983 after establishing that: "(1) he was deprived of a right secured by the Constitution or the laws of the United States; and (2) the deprivation was caused by a person acting under color of state law." *Smith v. Mohr*, No. 12-3241, 2012 WL 10235347, at *1 (6th Cir. 2012). As a preliminary issue, Defendants argue that plaintiffs may only establish liability under § 1983 if a defendant is "personally responsible for the unconstitutional actions which injured him." Defts.' MSJ, at 13 (citing *Heyerman v. Cnty. Of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012)). Similarly, Defendants note that plaintiffs must allege a constitutional violation "against each defendant individually." Defts.' MSJ at 14 (citing *Reilly v. Vadlamudi*, No. 11-1252, 680 F.3d 617, 624-25 (6th Cir. 2012)). This line of cases simply has no bearing on Mr. Koger's claims. In *Heyerman*, the Sixth Circuit held that a prosecutor sued in her official capacity was not liable in light of the fact that she was not connected—in any way—to the underlying constitutional violation. *Heyerman*, 680 F.3d at 647. *Reilly* is similarly inapplicable to this case. There, the Sixth Circuit rejected plaintiff's attempt to ascribe the "collective acts of defendants" to individual healthcare providers, none of which had knowledge of the alleged constitutional violation. *Reilly*, 680 F.3d at 626-27. Here,

---

[3] While not necessary in this case, RLUIPA "may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." 42 U.S.C. § 2000cc–3(c). *See Hobby Lobby*, 134 S.Ct., at 2761–2762, 2781–2782.

Mr. Koger's § 1983 claims are directed at the individuals who developed and executed the policies that have led to these constitutional violations, and who denied Mr. Koger's valid accommodation requests.

Defendants have failed to draw a rational connection between the cutting of Mr. Koger's dreadlocks and a legitimate penological interest, thereby violating his free exercise rights. Furthermore, Defendants have violated Mr. Koger's equal protection rights in light of the disparate and arbitrary application of the AR to similarly situated inmates. Defendants have failed to show an absence of genuine issues of material fact relating to both claims, and this Court should thus deny Defendants' motion for summary judgment.

### 1. Defendants Violated—and Continue to Violate—Mr. Koger's First Amendment rights.

The First Amendment guarantees "that our laws be applied in a manner that is neutral toward religion." *Masterpiece Cakeshop, Ltd., v. Colorado Civil Rights Comm'n.*, 138 S.Ct. 1719, 1732 (2018). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). The Sixth Circuit has held that "[s]everal factors" are relevant in determining the reasonableness of a restriction:

> (1) [W]hether there is a valid rational connection between the restriction and the government interest used to justify it;
> (2) whether there are alternative means of exercising the right that remains open to prison inmates";

(3) the impact [that] accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

(4) whether there is an absence of ready alternatives to the restriction.

*Turner v. Safley*, 482 U.S. 78, 89 (1987). Each case requires courts to make "specific factual findings" relating to each *Turner* factor. *Munir v. Scott*, 907 F.2d 151 (6th Cir. 1990). If the first factor is not present, the regulation is unconstitutional, and the other factors do not matter. *Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999); *Muhammad v. Pitcher*, 35 F.3d 1081, 1084 (6th Cir. 1994). The first *Turner* factor is multifold' and requires that the governmental objective underlying the regulations at issue is [1] legitimate and [2] neutral, and that [3] the regulations are rationally related to that objective." *Hanrahan v. Mohr*, 905 F.3d 947, 954-55 (6th Cir. 2018) (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 414 (1989)) (quotation marks omitted). Here, neither Defendants' pre-*Glenn* ban on dreadlocks nor its current policy prohibiting dreadlocks thicker than 1/2 inch are rationally related to security. First, there is no evidence in the record indicating that dreadlocks are a *prima facie* security risk. Instead, Defendants invite this Court to take their vague statements about security and hygiene as sufficient evidence. Second, the record indicates that security is simply not the primary goal of the ARs. Mr. Koger stated that he has no objection to his hair being searched with metal detectors, physical manipulation, or any other means, as alternatives to his dreadlocks being cut.

In lieu of factual evidence to support a legitimate claim to security or hygiene interests, Defendants attempt to bootstrap statistics from a twenty-two-year-old case involving a different prison. Defts.' MSJ, at 16. In *Williams v. Wilkinson*, Case No. 96-

14

3715, 1997 WL 809971 (6th Cir. 1997), the Sixth Circuit upheld Lima Correctional Facility's dreadlock ban in light of persuasive evidence that the facility had ongoing issues involving contraband and gang-affiliation. *Id.* at 3. Not so here. There is no evidence in the record indicating that either the pre-*Glenn* total ban or modified one-half-inch rule have a relationship to security concerns or any other penological interest.

Lastly, Defendants cite three pre-*Glenn* cases upholding the ODRC dreadlock ban as evidence that the AR is rationally related to legitimate penological goals. Id. at 17-18. It is telling that two of these cases were decided before *Haight v. Thompson*,[4] while the third only mentions *Haight* for support in an unrelated analysis.[5] There, the Sixth Circuit admonished prison officials for discussing security concerns at "a cloud-level height of abstraction." *Haight*, 763 F.3d at 562-63. Specifically, the court refused to ascribe any weight to prison officials' affidavits identifying sweat lodges as a security concern "without elaboration, without explanation." *Id.* at 563. In this case, Defendants cannot remove a genuine issue of material fact merely by paying lip service to words like "security" and "hygiene."

Regarding the second *Turner* factor, Defendants—again without evidence—argue that Mr. Koger could alternatively exercise his beliefs by growing his dreadlocks thinner than 1/2 inch. Defts.' MSJ, at 12 ("there is no evidence that individual dreadlocks grown naturally become woven without manipulation to exceed ½ inch in

---

[4] *See* Curry v. Bobby, No. 4:09cv614, 2009 WL 5097210 (N.D. Ohio 2009); *see also* Johnson v. Collins, No. 3:07 CV 211, 2007 WL 1306596 (N.D. Ohio 2007).

[5] *Lowe*, 2015 WL 9303143, at *2 (citing *Haight* for the principle that RLUIPA does not provide a monetary damage remedy against parties sued in their individual capacity).

thickness"). Mr. Koger's dreadlocks naturally grow thicker than 1/2 inch without manipulation. Koger Aff. at ¶ 35. Because Mr. Koger's religious beliefs require him to wear dreadlocks, cutting his hair removes his only means to comply with that belief.

Under the third *Turner* factor, allowing Mr. Koger to wear dreadlocks will not increase risks and costs for prisons. Mr. Koger has stated that he is willing to comply with searches in a variety of forms. Koger Aff. at ¶ 38. Mr. Koger's First Amendment challenge does not suggest that Defendants are prohibited from enforcing a truly security-based grooming policy against individuals who hide contraband in their hair or at increased security levels. Defendants have failed to produce any evidence that they are unable to mitigate their speculative security risks in alternative, less-burdensome ways.

The fourth and final *Turner* factor addresses whether Defendants have alternatives to the current restriction on Mr. Koger's right to free exercise. Defendants could still inspect and prohibit individuals from wearing their hair in a way that posed particular security or hygiene concerns.  Prohibiting particular hairstyles is unlawfully over-inclusive, as inmates like Mr. Koger are immediately violating the AR because their dreadlocks naturally grow thicker than 1/2 inch. Defendants have not presented any reason why a neutral ban on hair that creates security or hygiene risks would be more burdensome for prison officials to enforce. Defendants have ample alternatives to enforce these legitimate concerns without using generalized hairstyles as a proxy.

2. **Defendants Applied—and Continue to Apply—their Policies in Ways that Violate Mr. Koger's Equal Protection Rights.**

Defendants treat Rastafarians differently than adherents of other religions. Mr. Koger has to identify as Muslim to fast during his holy days, because ODRC will not allow him to fast as a Rastafarian. Defendants' administer their grooming ARs in an arbitrary fashion—punishing inmates like Mr. Koger for their religious beliefs—while leaving many other similarly situated inmates with their dreadlocks. Defendants fail to rebut this with evidence or provide a legitimate explanation. Thus, genuine issues of material fact remain in dispute regarding Mr. Koger's equal protection claim.

A plaintiff establishes an equal protection claim by showing that: "(1) the regulation is facially discriminatory; (2) the regulation is discriminatory in its application or establishes disparate treatment; or (3) the regulation is administered unequally by the defendants." *Johnson*, 2007 WL 1306596, at *6 (*citing Wellmaker v. Dahill*, 836 F.Supp. 1375, 1385 (N.D. Ohio 1993)). In addition to facially targeting dreadlocks as a proxy for security concerns, Defendants' policy is applied arbitrarily and in a discriminatory manner.

A troubling indication of discrimination is the Defendants' attempt to cast Mr. Koger as a Muslim, in spite of his sincere and long-standing commitment to Rastafarianism. Specifically, Defendants used their own religious accommodation procedure as a vehicle to cast doubt on Mr. Koger's beliefs. For many years, Mr. Koger has requested to take part in as many fasting accommodations as possible. Koger Aff. at ¶¶ 5, 13, 15. ODRC does not acknowledge Rastafarianism or provide specific

17

accommodations for his dietary needs. ODRC does, however, provide dietary and fasting accommodations for a plethora of other faiths. Mr. Koger has traditionally sought fasting opportunities under one or more of these other accommodations simply because they are his best alternative to live according to his faith. Koger Aff. at ¶¶ 10, 14. One of these accommodations was a request to take part in Ramadan, the Muslim holiday in which believers fast from dawn until sunset. *Id.* at ¶ 13. Although Mr. Koger applied for this accommodation as a means to practice in accordance with his Rastafarian faith, Defendants have used it to claim that Mr. Koger's Rastafarianism is insincere. Defendants disingenuously argue that they cannot discriminate against Mr. Koger's religious beliefs because he is not a Rastafarian. In light of evidence to the contrary, Defendants have failed to establish the absence of genuine issues of material fact and the Court should deny the motion for summary judgment.

### 3. Defendants Are Not Entitled to Qualified Immunity.[6]

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts ask two questions to determine whether a party is entitled to qualified immunity: "First, taken

---

[6] For the reasons set forth in Plaintiff's Motion for Extension of Time and Request for Status Conference Regarding Mediation, filed Jan. 29, 2019 (ECF No. 44), Plaintiff requests an appropriate order to obtain discovery to present facts essential to fully oppose Defendants' qualified immunity analysis.

in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right. Second, is the right clearly established?" *Maben*, 887 F.3d at 269 (citation omitted). Lastly, qualified immunity does not protect officials from declaratory or injunctive relief. *Flagner v. Wilkinson*, 241 F.3d 475, 483 (2001).

Defendants violated Mr. Koger's clearly established constitutional rights when they forcibly cut his dreadlocks in 2016. The line of cases upholding dreadlock bans either pre-existed or essentially ignored the Supreme Court's guidance in *Holt*. There, the Court noted that "[i]f petitioner contravenes that policy and grows his beard, he will face serious disciplinary action. Because the grooming policy puts petitioner to this choice, it substantially burdens his religious exercise." *Holt* at 862. Defendants admit that one of more ODRC representatives who cut Mr. Koger's dreadlocks on November 2, 2016 "knew at the time that the Rastafarian religion forbids haircuts." Ex. B at 4, RFA No. 14.

If not entirely clear to Defendants before *Holt*, Judge Gaughan in the Northern District of Ohio recently clarified to them in *Glenn* that dreadlock bans are unconstitutional absent a demonstration that unique circumstances apply:

> [I]f 'so many' prisons are able to manage the security concerns associated with accommodating religious requests, the defendant must be able to demonstrate why its prison is different. For similar reasons, the Court does not find persuasive the pre-*Holt* district court cases upholding dreadlock bans on which defendants rely.

19

*Glenn*, 2018 WL 2197884, slip op., at note 4. Defendants' claim to qualified immunity rests solely on the line of cases rejected in *Glenn*. *See* Def.'s Motion, at *18-19. Defendants are not entitled to qualified immunity from Mr. Koger's § 1983 claims and this Court should deny Defendants' motion for summary judgment.

## III.  Conclusion

Mr. Koger has demonstrated that he has sincerely held religious beliefs as a Rastafarian, and Defendants refuse to recognize and reasonably accommodate his ordinary and peaceful religious practices. Per Mr. Koger's religious tenets, he will continue to grow his hair naturally, and continue to seek out opportunities to fast in observance of his religion. Without an order from this Court, ODRC will continue to desecrate Mr. Koger's body with force-cuts, and deny him the dignity of recognizing his reasonable requests to practice his religion in peace.

Respectfully submitted,

/s/ John Wrench
John Wrench
*Certified Legal Intern*

/s/ Andrew C. Geronimo
Andrew C. Geronimo (#0086630)
*Supervising Attorney*
MILTON A. KRAMER LAW CLINIC CENTER
CASE WESTERN RESERVE UNIVERSITY
SCHOOL OF LAW
11075 East Boulevard
Cleveland, Ohio  44106
Telephone: 216.368.2766
Facsimile: 216.368.5137
Email: andrew.geronimo@case.edu
*Attorneys for Plaintiff*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)**

I certify that this memorandum in opposition to Defendants' Motion for Summary Judgment is 20 pages, and complies with the page limits and other requirements set forth in Local Rule 7.1(F) regarding Length of Memoranda. This is a standard track case.

/s/ Andrew C. Geronimo
*One of the Attorneys for Plaintiff Cecil Koger*

1

## <u>CERTIFICATE OF SERVICE</u>

On this 3rd day of April, 2019 I filed the foregoing electronically. The Court's electronic filing system will send notice of this filing to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ Andrew C. Geronimo
*One of the Attorneys for Plaintiff Cecil Koger*
