IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CECIL KOGER, : | |
| : | Case No. 4:17-CV-02409 |
| Plaintiff, : | |
| : | Judge Benita Y. Pearson |
| v. : | |
| : | |
| DIRECTOR GARY MOHR, et al., : | |
| : | |
| Defendants. : | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO STRIKE**

Plaintiff Cecil Koger ("Plaintiff") has filed a motion to strike (Doc. 53) the reply (Doc. 52) Defendants Ohio Department of Rehabilitation and Correction ("ODRC"), Gary Mohr, Todd Ishee, David Bobby, Michael Davis, Charmaine Bracy, Alexander Kostenko, Richard Bowen, Jr. and David Marquis' ("Defendants") previously filed in support of their motion for summary judgment. (Doc. 45). However, Plaintiff's reliance on Rule 12(f) of the Federal Rules of Civil Procedure is misplaced. Pursuant to Rule 12(f), the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

However, a declaration does not fall within the ambit of what is considered a "pleading" under Rule 7, and therefore is not subject to a motion to strike brought under Rule 12(f). See *Wimberly v. Clark Controller Co*., 364 F.2d 225, 227 (6th Cir. 1966) ("The motion to strike the affidavits was filed pursuant to Rule 12(f), Federal Rules of Civil Procedure. This rule specifically relates to matters to be stricken from pleadings, but does not make provision for testing the legal sufficiency of affidavits by a motion to strike."); *see also York v. Ferris State*

*Univ.*, 36 F. Supp.2d 976, 980 (W.D. Mich. 1998) ("Rule 12(f), by its express terms, applies only to 'pleadings.' An affidavit is not a 'pleading.' . . . Thus, Rule 12(f) provides no basis for the motion."). "Whether the briefs contain matters that are irrelevant to the issues to be decided in the various motions is, of course, a proper matter for consideration in deciding those motions. However, Rule 12(f) provides no warrant for striking these submissions, as they do not constitute pleadings subject to Rule 12(f)." *Herrerra v. Michigan Dep't of Corrs.*, 2011 U.S. Dist. LEXIS 98567, 2011 WL 3862426, at *2 (E.D. Mich. July 22, 2011), *adopted by* 2011 U.S. Dist. LEXIS 98535, 2011 WL 3862386 (E.D. Mich. Sept. 1, 2011).

There can be no question that the declarations filed in support of Defendants' reply are not pleadings, nor is the reply itself. See *Dulah v. Corizon,* Inc., Case No. 14-10193, 2014 U.S. Dist. LEXIS 131112 (E.D. Mich. 2014). Thus, it appears that Plaintiff filed his motion to strike Defendants' reply and the declarations attached thereto for one reason and one reason only, namely because he objects to any testimony which would rebut, contradict, and/or impeach the newly asserted claims he made for the very first time in his oppositional response, namely that 1) he has been denied the ability to observe his 180 fast days; 2) he has been denied the opportunity to commune with other believers; and 3) his dreadlocks grow naturally to exceed ODRC's one-half inch thickness limitation. (Doc. 50, PageID 451, 456, 465).

Because Rule 12(f) provides for a "drastic remedy," such motions are "generally viewed with disfavor and are rarely granted." *Hiles v. Army Review Bd. Agency*, No. 1:12-cv-673, 2014 U.S. Dist. LEXIS 171067, 2014 WL 7005244, at *1 (S.D. Ohio Dec. 10, 2014) (citing *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)). And as more fully explained below, there should be no different decision reached here.

2

Indeed, because none of the above-enumerated claims were ever asserted until long after discovery had closed (Doc. 29), Defendants were unable to depose Plaintiff regarding the same. Furthermore, since Plaintiff did not make known any of these claims until he filed his opposition in response to Defendants' motion for summary judgment on April 3, 2019, (Doc. 50), Defendants had no reason, much less the opportunity, to include the names of any rebutting, contradicting and/or impeaching witnesses in their Civil Rule 26(a) disclosures (Doc. 53-1) prior to filing their reply, nor were they required to do so since these witness' testimony related solely to these newly raised matters.[1]

Plaintiff identifies the following as proof that the new arguments raised in his oppositional response were initially presented within his Amended Complaint:

> Defendants argue that Mr. Koger raised novel arguments in his Opposition. Reply at FN1, 4. Mr. Koger's Amended Complaint referenced a refusal to acknowledge his religious beliefs generally (ECF No. 30 at ¶¶ 129, 134) and specifically alleged violations relating to fasting multiple times. (Id. at ¶¶24, 27, 56.) (Motion to Strike, Doc. 53, PageID 616, FN 2).

In so doing not only does Plaintiff misidentify the docket number of the Amended Complaint as ECF No. 30 (the correct docket number is ECF No. 32), but also he blatantly mischaracterizes the allegations specifically set forth in the Amended Complaint. For this reason, Defendants present the full text from the Amended Complaint for the Court's convenience below.

> 129. The ORDC Defendants' and Mr. Marquis' policies, absolute prohibition of dreadlocks, enforcement of the No-Exemption Memo, force-cuts of Mr. Koger's dreadlocks, and refusal to consider or individually assess his religious-

---

[1] Because the claims relating to Plaintiff's alleged inability to fast for 180 days and commune with other believers were not raised until he filed his oppositional response, there was no reason for Defendants to disclose the name of ODRC's Assistant Chief Inspector, Kelly Riehle, on the issue of exhaustion. Likewise, because Plaintiff only challenged ODRC's failure to install "newer technologies" for the first time in his oppositional response (Doc. 50, PageID 461), there was no reason for Defendants to disclose the name of ODRC's Assistant Director, Stuart Hudson, regarding backscatter x-ray scanners. Nor, since discovery had long since been closed, would Plaintiff have been able to depose any of these witnesses regarding these newly raised theories.

accommodation requests substantially burden his sincerely held religious beliefs and practices.

134. Defendants' policies, absolute prohibition of dreadlocks, enforcement of the No-Exemption Memo, force-cuts of Mr. Koger's dreadlocks, and refusal to consider or individually assess his religious-accommodation requests were not and are not neutral policies, because they target Rastafarians and are not neutrally applied. They therefore violate the Free-Exercise Clause of the First Amendment, as incorporated by the Fourteenth Amendment.

24. Mr. Koger's faith also requires him to observe specific fasting periods.[2]

27. Mr. Koger has submitted numerous requests for religious accommodations throughout his sentence in DRC facilities for wearing dreadlocks, following an *ital* diet, fasting during specific holidays,[3] accessing recognized religious texts, and participating in religious gatherings with his fellow Rastafarian inmates.

56. Further, ODRC's Muslim Religious Services policy allows for female inmates to wear an approved headscarf and for all Muslim inmates to fast during Ramadan. *Id*.

(Amended Complaint, Doc. 32).

Rule 26(a) requires each party to disclose individuals who have discoverable information "the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). Federal Rule of Civil Procedure 26(a)(2)(C) further provides that rebuttal disclosures are those that relate to evidence that is "intended solely to contradict or rebut evidence on the same subject matter identified by another party." As such, rebuttal evidence is limited "to that which is precisely directed to rebutting **new matter or new theories** presented." *Duff v. Duff*, 2005 U.S. Dist. LEXIS 46111, 2005 WL 6011250 *4 (E.D.

---

[2] But the only specific fasting period the Amended Complaint identifies is the one that occurs during the Muslim holiday of Ramadan at ¶ 56.

[3] Similarly, the only specific holiday the Amended Complaint refers to in connection with fasting is Ramadan at ¶ 56.

4

Ky. Nov. 14, 2005) (quoting *Crowley v. Chait*, 322 F. Supp. 2d 530, 550-51 (D.N.J. 2004) (emphasis added)).

Accordingly, Defendants were entitled to rebut, contradict and/or impeach the new matters and theories Plaintiff presented for the very first time in his response to their motion for summary judgment within the parameters of the Court's May 23, 2018 Case Management Conference Plan/Order (Doc. 29) and Rule 26(a)(2)(C), whether they pertained to 180 days of fasting, communing with other believers, or the thickness of his naturally grown dreadlocks. Certainly Defendants had no duty to anticipate or negate those claims that were never raised until the eleventh hour in Plaintiff's response to Defendants' motion for summary judgment. See *Martin v. Weaver,* 666 F.2d 1013, 1020 (6th Cir. 1981).[4]

Nonetheless, Plaintiff insists that the Court strike the declarations of Warden Assistant Rossi Azmoun and Barber Instructor Rhonda L. Grys, as well as the photographs taken of Plaintiff's dreadlocks on April 8, 2019.  But the Azmoun and Grys declarations, including the photographs attached thereto, are limited to one topic and one topic only, namely the thickness of Plaintiff's dreadlocks, a matter which was placed at issue for the very first time by Plaintiff on April 3, 2019.  (Doc. 50).  Critically, these declarations, along with the photographs Mr. Azmoun took on April 8, 2019, serve only to rebut, contradict, and impeach Plaintiff's testimony regarding the natural growth of his dreadlocks.[5]  (Doc. 50-1, PageID 476).

---

[4] While Plaintiff's Amended Complaint, filed on June 8, 2018, raises no issues whatsoever relating to the thickness of his dreadlocks, his ability to fast for 180 days, or his ability to commune with other believers, it does state that his dreadlocks have grown back, "extending down between three and three-and-one-half inches, and will continue to grow and lock further if he is permitted to let it."  (Doc. 32, PageID 331).

[5] Since Plaintiff's affidavit does not constitute a pleading, Defendants did not move to strike it even though it contained new matters and theories that were not previously raised, upon which Defendants had no opportunity to conduct discovery, and which were never exhausted.

Although no pictures of his dreadlocks were furnished to Plaintiff prior to the closure of discovery on November 30, 2018 (Doc. 29), since the thickness of his dreadlocks had not yet been raised as an issue, Defendants had no reason to do so.  Meanwhile, the thickness of Plaintiff's dreadlocks remains readily apparent for all to see without physical examination.  All Plaintiff needs to do to assess the condition of his dreadlocks is to look in the mirror; in so doing he will see precisely what the photographs taken by Mr. Azmoun depict.  Thus, the thickness of Plaintiff's dreadlocks needed no physical examination and can be readily assessed by him, by his counsel, by prison officials, by the Court and/or by a jury just by looking whether he appears before them in person, in a video, or in the photographs taken by Mr. Azmoun on April 8, 2019.

Because no physical examination was needed in order to assess the thickness of Plaintiff's dreadlocks or to provide Defendants an even playing field in evaluating the same, there was no circumvention of Rule 35's requirements relating to physical[6] and/or mental examinations.  See *Tomlin v. Holecek,* 150 F.R.D. 628, 632 (D.Minn. 1993) (purpose in allowing an examination under Rule 35 is to provide a "level playing field" in the parties' efforts to evaluate the plaintiff's condition).

Nor is there any suggestion that Mr. Azmoun or Ms. Grys conducted a physical or mental examination of Plaintiff's dreadlocks, much less that they touched his hair or questioned him regarding his dreadlocks in any way.  To the contrary, all Mr. Azmoun did was stand to the side and take Plaintiff's picture, while Ms. Grys did nothing at all.  The suggestion that the mere taking of pictures from afar amounts to a physical examination is ludicrous.  See *Furlong v. Circle Line Statue of Liberty Ferry, Inc.*, 902 F. Supp. 65, 69 (S.D.N.Y. 1995) (plaintiff's

---

[6] Notably, the first dictionary definition given for the word "physical" is "medical."  See Riverside Webster's II New College Dictionary, 1995 ed., at page 830.

physical condition was in controversy because he brought suit to recover damages for the injuries to his hand).

But even if taking pictures of an inmate's dreadlocks somehow constitutes a physical examination, there has been no violation of Rule 35's requirements here since a physical examination may be obtained by the agreement of the parties.  See *Anderson v. Sposato*, 11-cv-5663, 2013 U.S. Dist. LEXIS 21214, at * 24 (E.D. N.Y. 2013) (unlike other discovery methods, a mental or physical examination may be obtained **by agreement of the parties** or by the party seeking the examination filing a motion for the judge to decide).  It is therefore significant that Plaintiff specifically agreed to have ODRC officials take pictures of his dreadlocks.  Indeed, as sworn in his April 2, 2019 affidavit, Plaintiff is "not opposed to ODRC facilities searching [his] dreadlocks by any other reasonable means other than cutting [his] dreadlocks, including with metal detectors, x-rays, **or other imaging technology**, or by manual searching…."  (Doc. 50-1, PageID 477) (emphasis added).  In light of Plaintiff's (and his counsel's) willingness to have his hair probed by any reasonable means short of cutting, Mr. Azmoun's use of the simplest of imaging devices, namely a camera, to take  photographs of Plaintiff's dreadlocks from afar without any physical contact whatsoever can constitute neither surprise nor prejudice.

Plaintiff also faults Defendants for challenging the sincerity of his religious beliefs by citing The Fetha Nagast.  But Defendants did not consult The Fetha Nagast, in random, nor did they cite The Fetha Nagast in an effort to cast doubt upon the sincerity of Plaintiff's religious beliefs.  Rather, Defendants obtained a hard copy of The Fetha Nagast in an effort to determine when each of Plaintiff's 180 fast days would occur, how long each fast day would last, and what restrictions or accommodations, if any, each fast day would entail because **Plaintiff himself**

7

**identified** <u>The Fetha Nagast</u> **as the religious authority upon which his accommodation requests were based**. (Doc. 50-1, PageID 488). Nevertheless, and despite these efforts, the source of Plaintiff's religious beliefs regarding the 180 fast days his oppositional response claims he is required to observe remains elusive, unsupported, undefined and uncertain in every respect.

Indeed, although ODRC policy specifically required Plaintiff, himself, to submit a completed DRC4326 form including the who, the what, the where, the when, the why and the how of each of his claimed fast days 90 days in advance thereof, 72-REG-02(VI)(J)(3) (Doc. 52-7, Exhibit G, Motion for Summary Judgment), Plaintiff failed to submit even one such request detailing the religious basis of any fast day, much less when the fast day would occur, the length of each fast day, or what foods may or may not be restricted. Declaration of Mike Davis, (Doc. 52-2, Exhibit B, Motion for Summary Judgment). See also Doc. 50, PageID 456. And although it was touted by Plaintiff as the authority in support of his religious beliefs, <u>The Fetha Nagast</u>'s specific instructions on fasting are nearly indecipherable. See *The Fetha Nagast* Chapter XV, On All The Fasts, (Doc. 52-3, Exhibit C, Motion for Summary Judgment).

With regard to Plaintiff's request for sanctions as a result of Defendants' (and counsel's) alleged failures to comply with their discovery obligations, Rule 37(a)(5) provides that *if* disclosures are provided after a motion is filed, the court shall require the party whose conduct necessitated the motion to pay the moving party's reasonable expenses incurred in making the motion *unless* the court finds that the opposing party's nondisclosure was substantially justified. Rule 37(a)(5)(A)(ii).

8

In the present case, since discovery had long since closed by the time Plaintiff first alleged that 1) he has been denied the ability to observe his 180 fast days; 2) he has been denied the opportunity to commune with other believers; and 3) his dreadlocks grow naturally to exceed ODRC's one-half inch thickness limitation, the alleged nondisclosure was substantially justified. Furthermore, raised for the first time in Plaintiff's oppositional response, with a reply memorandum due within a matter of days, Rule 7.1 (e), the names of these witnesses, along with the substance of their testimony, were disclosed in Defendants' reply.  Therefore, there was no nondisclosure, rendering Plaintiff's motion for sanctions moot.

Likewise, because Plaintiff was never physically examined either by Mr. Azmoun or Ms. Grys, because the condition of Plaintiff's dreadlocks was at all times readily apparent, requiring no physical examination whatsoever by any party to see, evaluate or to determine, and because Plaintiff (and his counsel) readily agreed to the use of imaging devices, including cameras, to satisfy ODRC's dreadlock concerns, Doc. 50-1, PageID 477, Rule 35's restrictions never come into play.

Moreover, not only is there no failure to abide by the requirements of discovery here, but also the four-factor test adopted by the Sixth Circuit in *Freeland v. Amigo,* 103 F.3d 1271, 1277 (6th Cir.1997), underscores why the imposition of discovery sanctions under Rule 37 is not appropriate in this case.  Notably, the first *Freeland* factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to sanctions is whether less drastic sanctions were first imposed or considered. *Freeland v. Amigo,* 103 F.3d at 1277.

By contrast, Plaintiff here has met none of the four *Freeland* factors.  First and foremost, since Defendants had no obligation (much less time) to disclose witness testimony rebutting, contradicting and/or impeaching the newly raised matters set forth for the first time in Plaintiff's oppositional response, including the thickness of his dreadlocks, they did not fail to abide by their discovery obligations.  Equally important, since the thickness of Plaintiff's dreadlocks was, is, and will remain readily apparent without the need for any physical examination to anyone with whom he, or his image, comes into contact the current appearance of his hair cannot conceivably prejudice his lawsuit.

Neither has there been any warning that Defendants' alleged cooperation failures could lead to sanctions, nor have any sanctions been requested other than the complete eradication of Defendants' reply and the payment of money.  Accordingly, the *Freeland* factors indicate that Plaintiff's motion for sanctions should be overruled.  *Id*.

This conclusion is further supported by the fact that Plaintiff has the burden of documenting the amount of the sanctions being requested and must "submit evidence supporting the hours worked and rates claimed," but has nonetheless failed to do so.  *See Reed v. Rhodes,* 179 F.3d 453, 472 (6th Cir.1999) (citing *Hensley v. Eckerhart,* 461 U.S. 421, 432 (1983)).  For all of these reasons, Plaintiff's motion to strike and for sanctions should be denied.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

s/  Mindy Worly
Mindy Worly (0037395)
Principal Assistant Attorney General
Criminal Justice Section
150 East Gay St., 16th Floor
Columbus, Ohio  43215
Tel: (614) 728-0161/Fax: 866-474-4985
Mindy.worly@ohioattorneygeneral.gov
*Trial Counsel for Defendants*

## LOCAL RULE 7.1(f) CERTIFICATION

I certify this case is on the Standard Track (Doc. 29) and the foregoing memorandum complies with the page limitations set forth in Local Rule 7.1(f).

s/  Mindy Worly
Mindy Worly (0037395)
Principal Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was electronically filed on May 1, 2019.  Notice of this filing will be sent to counsel for all parties via the Court's electronic filing system.  Parties may access this filing through the Court's system.

s/  Mindy Worly
Mindy Worly (0037395)
Principal Assistant Attorney General

11