PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


CECIL KOGER,                          )
                                      )     CASE NO.  4:17CV2409
            Plaintiff,                )
                                      )
      v.                              )     JUDGE BENITA Y. PEARSON
                                      )
GARY C. MOHR, *et al.*,               )     **MEMORANDUM OF OPINION AND**
                                      )     **ORDER**
            Defendants.               )     [Resolving ECF Nos. 45, 53]



      Pending before the Court is a motion for summary judgment filed on behalf of

Defendants Ohio Department of Rehabilitation and Correction ("ODRC"), ODRC Director Gary

Mohr, ODRC Northeast Regional Director Todd Ishee, ODRC Northwest Regional Director

Dave Bobby, ODRC Religious Services Administrator Michael Davis, Trumbull Correctional

Institution Warden Charmaine Bracy, Trumbull Correctional Institution Chaplain Alexander

Kostenko, former Trumbull Correctional Institution Deputy Warden Richard Bowen, Jr., and

Richland Correctional Institution Warden Dave Marquis.  ECF No. 45.  Plaintiff Cecil Koger

responded (ECF No. 50) and Defendants replied (ECF No. 52).  Plaintiff also filed a Notice of

Objection and Motion to Strike Defendants' Reply to Plaintiff's Opposition to Defendants'

Motion for Summary Judgment.  ECF No. 53.  Defendants responded (ECF No. 54) and Plaintiff

replied (ECF No. 55).  For the reasons that follow, the Court grants Plaintiff's motion to strike

in part and grants Defendants' motion for summary judgment.

## I. Background[1]

Plaintiff is an inmate at Richland Correctional Institution ("RCI").[2]  ECF No. 32 at PageID #: 313.  He has been incarcerated in one of ODRC's prison facilities since 2000.  Id. at PageID #: 315.  He is also a practicing member of the Nyahbinghi Rastafarian Order.  Id.

### A.  Plaintiff's Religious Beliefs

Plaintiff avers that his religious beliefs require him to partake in certain practices.  For instance, Plaintiff believes that, under the Nazarite vow, he must permit his hair to grow and lock naturally, resulting in locked hair.  Plaintiff also believes that he must adhere to an *ital* diet, which prohibits the consumption of processed foods.  Additionally, Plaintiff believes he is required to "observe specific fasting periods" and congregate to celebrate holidays in worship services called 'groundings.'"  ECF No. 32 at PageID #: 316; ECF No. 50-1 at PageID #: 473.

### B.  ODRC's Pre-*Glenn* Grooming Policy

Prior to October 22, 2018, ODRC maintained a grooming policy prohibiting inmates from wearing locked hair.  ECF No. 32 at PageID #: 318.  Defendants have interpreted this policy as

---

[1] The Case Management Plan (ECF No. 29) entered on May 23, 2018 provides, in pertinent part:

> Lead counsel of record shall confer with one another in person in order to prepare written stipulations as to all uncontested facts to be presented by the dispositive motion.  The stipulations shall be filed with the Court on or before February 1, 2019.

ECF No. 29 at PageID #: 295.  No fact stipulations were filed.  Upon reviewing the motion briefing, it is patent that the parties could have stipulated to certain facts.

[2] Ohio Department of Rehabilitation & Correction, Offender Search, https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A384698 (last visited Sept. 12, 2019).

an absolute prohibition on locks. *Id.* On November 2014, then-Trumbull Correctional

Institution ("TCI") Warden Christopher LaRose distributed a memorandum providing that "there

are no religious exemptions for [dreadlocks]." *Id.* at PageID #: 319. In accordance with

ODRC's grooming policy, Defendants denied each of Plaintiff's requests for religious

accommodations to grow his locks, resulting in the force-cutting of Plaintiff's hair on five

occasions during his incarceration. *Id.* at PageID #: 323-24.

     The most recent of these force-cuts occurred on November 2, 2016, while Plaintiff was

detained at TCI. *Id.* at PageID #: 329. Five months prior, Plaintiff was informed that TCI would

enforce ODRC's grooming policy by cutting his locks. ECF No. 50-1 at PageID #: 475. On

September 21, 2016, Defendant Bowen issued Plaintiff a direct order to cut his own locks, in

compliance with the grooming policy. *Id.* Plaintiff refused, citing his religious beliefs. *Id.* In

response, Defendants Bowen and Bracy informed Plaintiff that he could not receive a religious

accommodation for his locks because the ODRC did not recognize Rastafarianism. *Id.*

     As a consequence of refusing to comply with ODRC's grooming policy, Plaintiff was

placed in a segregation unit. *Id.* Plaintiff filed an administrative appeal of ODRC's denial of his

request for religious accommodation, but his appeal was denied. *Id.*

     On November 2, 2016, TCI staff approached Plaintiff in his cell within the segregation

unit and informed him that, if he did not comply with the order to cut his own locks, he would be

subjected to a force-cut. ECF No. 32 at PageID #: 328. Plaintiff refused to cut his locks or leave

his cell. *Id.* at PageID #: 329. In response, TCI staff administered oleoresin capsicum spray into

the cell, forcing Plaintiff to exit the cell. *Id.* TCI staff then shackled Plaintiff and force-cut his locks. *Id.*

### C. ODRC's Post-*Glenn* Grooming Policy

On May 14, 2018, a district court in the Northern District of Ohio granted summary judgment in favor of a plaintiff inmate and against Defendant ODRC on a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA").[3] *Glenn v. Ohio Dep't of Rehab. & Corr.*, No. 4:18-CV-436, 2018 WL 2197884 (N.D. Ohio May 14, 2018) (Gaughan, J.). The *Glenn* court concluded that ODRC's grooming policy, as applied to the plaintiff, violated RLUIPA because ODRC's categorical prohibition on locks was not the least restrictive means of furthering the state's interest in prison safety and security. *Id.* at *4.

Following *Glenn*, ODRC revised its grooming policy, effective October 22, 2018. ECF No. 45 at PageID #: 406-07. As revised, ODRC's grooming policy, AR 5120-9-25, now reads:

> Braids and dreadlocks may be worn subject to the limitations of this rule and provided that the thickness of each individual braid or dreadlock does not exceed 1/2 inch. The following hairstyles or facial hair are not permitted: Initials, symbols, dyes, multiple parts, hair disproportionately longer in one area than another (excluding natural baldness), and weaves. Other hairstyles not specifically listed herein may be prohibited if they are determined to be either a threat to security or contrary to other legitimate penological concerns, as determined by the office of prisons. The warden may impose restrictions or authorize exemptions to these prohibitions for documented medical or mental health reasons, in conjunction with medical or mental health treatment, or to accommodate a sincerely held religious belief.

ECF No. 45-3 at PageID #: 433.

---

[3] The plaintiff in *Glenn* did not bring any other claims.

## II. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Johnson v. Karnes, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). To defeat the motion, the non-moving party must, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.*

### III. Discussion

#### A. Motion to Strike

As an initial matter, Plaintiff moves the Court to strike or disregard Defendants' Reply to Plaintiff's Opposition to Motion for Summary Judgment (ECF No. 52), or in the alternative, strike or disregard evidentiary materials filed in support of the Reply (ECF Nos. 52-1, 52-3, 52-4, 52-5, 52-6) and all textual references to that material in the reply brief. ECF No. 53. Plaintiff claims Defendants committed numerous violations of the Federal Civil Rules of Procedure. First, Plaintiff argues that Defendants subjected Plaintiff to a physical examination without

obtaining a court order under Fed. R. Civ. P. 35(a), and well after the discovery cutoff. Second, Plaintiff contends Defendants improperly submitted four affidavits from witnesses not identified in Defendants' initial disclosures or named as potential witnesses in their discovery responses. Finally, Plaintiff asserts that Defendants relied upon inadmissible evidence in support of their Reply.

The Federal Rules of Civil Procedure do not provide for a motion to strike documents or portions of documents other than pleadings. *See* Fed. R. Civ. P. 12(f) (limited to striking pleadings or portions of pleadings). If a brief or affidavit refers to matters the court should not consider (such as inadmissible evidence), while the court is free to exercise its discretion, the usual recourse is for the court simply to disregard those matters, not to strike them. *Lombard v. MCI Telecomm. Corp.*, 13 F. Supp. 2d 621, 625 (N.D. Ohio 1998) (citing *State Mut. Life Assurance Co. of Am. v. Deer Creek Park*, 612 F.2d 259, 264 (6th Cir. 1979)).

### 1. Physical Examination

Plaintiff contends that, by taking a photograph of his locks, Defendants violated Fed. R. Civ. P. 35 by conducting a physical examination of Plaintiff without a court order. He claims that this is grounds for the Court to disregard the affidavits and photographs resulting from the examination. ECF No. 53 at PageID #: 614-15.

Plaintiff, however, provides no legal authority for the proposition that the taking of a photograph constitutes a physical examination under Rule 35. Nor does the rule's plain language

support Plaintiff's broad reading of the term "physical examination." Fed. R. Civ. P. 35(a)(1)

(authorizing the court to order a party to submit to a physical examination "by a suitably licensed

or certified examiner").

Plaintiff also claims Defendants, through counsel, violated Ohio Prof. Cond. R. 4.2:

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Ohio Prof. Cond. R. 4.2.  Plaintiff does not explain how Defendants violated this rule.  There is

no indication that Defendants' counsel communicated about the subject of the representation

with Plaintiff.

Plaintiff's motion to strike, based on Defendants' photographing of Plaintiff's locks, is

denied.

### 2.  Witness Affidavits

A party must provide to the other parties, *inter alia*, and within the time period required

to make initial disclosures, "the name and, if known, the address and telephone number of each

individual likely to have discoverable information—along with the subjects of that

information—that the disclosing party may use to support its claims or defenses . . . ." Fed R.

Civ. P. 26(a)(1)(A)(i).  Moreover, a party must timely supplement or correct its disclosure or

response "if the party learns that in some material respect the disclosure or response is

incomplete or incorrect . . . ." Fed. R. Civ. P. 26(e).  A party's failure to identify a witness as

required under Rule 26(a) or (e) generally precludes the party from using that witness to supply

evidence on a motion.  Fed. R. Civ. P. 37(c)(1).  Evidence preclusion, however, will not lie if the party's failure was substantially justified or is harmless.  *Id.*; *see Baker Hughes Inc. v. S&S Chem., LLC*, 836 F.3d 554, 569 (6th Cir. 2016).

Plaintiff claims that the four affidavits Defendants attach to their reply brief in support of their motion for summary judgment should be disregarded.  He states that Defendants failed to disclose the identity of any of the affiants through initial disclosures or discovery.  ECF No. 53 at PageID #: 616.  Because Plaintiff did not have an opportunity to obtain discoverable information from the affiants, he contends that the Court should disregard the affidavits under Rule 37(c)(1).  *Id.*

Defendants respond that they "had no reason, much less the opportunity, to include the names of any rebutting, contradicting and/or impeaching witnesses in their . . . Rule 26(a) disclosures prior to filing their reply[.]"  ECF No. 54 at PageID #: 627.  They allege Plaintiff raised claims relating to his "alleged inability to fast for 180 days and commune with other believers" for the first time in his opposition to Defendants' motion for summary judgment.  *Id. at PageID #: 627 n.1.*  They further argue Plaintiff placed the thickness of his locks at issue for the first time in his opposition.  *Id. at PageID #: 629.*

Disclosure of witness information is not required if the use would be solely for impeachment.  Fed. R. Civ. P. 26(a)(1)(A)(i).  A party, however, is required to "disclose information it may use to support its denial or rebuttal of the allegations, claim, or defense of another party."  Fed. R. Civ. P. 26(a)(1), Advisory Committee's Note (2000).  "Impeachment is an attack on the credibility of a witness, whereas rebuttal testimony is offered to explain, repel,

counteract, or disprove evidence of the adverse party." *Toliver v. JBS Plainwell, Inc.*, No. 1:11-CV-302, 2014 WL 359494, at *3 (W.D. Mich. Feb. 3, 2014) (quoting *Sterkel v. Fruehauf Corp.*, 975 F.2d 528, 532 (8th Cir. 1992)). "If a document has some impeachment value, but also has independent relevance to the merits of the case, the document is not 'solely' for impeachment and must be disclosed." *Id.*

### a. Problematic Affidavits

Certain of Defendants' affidavits have independent, substantive relevance to the merits of the case. Defendants attach the affidavits of Rossi Azmoun and Rhonda Grys for the purpose of disproving Plaintiff's sworn statement regarding the thickness of his locks. *See* ECF No. 50-1 at PageID #: 476-77. The affidavit of ODRC Assistant Chief Inspector Kelly Riehle evidences Plaintiff's failure to exhaust his administrative remedies as to claims regarding his religious dietary needs and his requests to commune with other believers. ECF No. 52-1. Finally, the affidavit of ODRC Assistant Director Stuart Hudson supports Defendants' claim that ODRC considered but decided against using backscatter x-ray scanners in its prisons for fiscal, logistical, and inmate health concerns. ECF No. 52-6. These affidavits, in addition to having impeachment value, also support the rebuttal of Plaintiff's allegations or claims. Because these affidavits have substantive relevance to the case's merits, Rule 26(a)(1)(A)'s exemption from disclosure for evidence used solely for impeachment is inapplicable.

Defendants had reason to know that Riehl was likely to have discoverable information. Plaintiff alleges in his Amended Complaint that "[his] faith required him to observe specific fasting periods" and that he "has submitted numerous requests for religious accommodations . . .

for wearing locks, following an *ital* diet, fasting during specific holidays, accessing recognized

religious texts, and participating in religious gatherings with his fellow Rastafarian inmates."

ECF No. 32 at PageID #: 316-17. Plaintiff's claims accordingly include his alleged inability to

fast or commune with other believers. He further states that, despite multiple attempts to explain

the significance of the fasting dates to his religious beliefs, Defendants "have denied virtually all

of [Plaintiff's] requests." *Id.* at PageID #: 317. Defendants had notice of the availability of an

administrative exhaustion affirmative defense from the face of Plaintiff's Amended Complaint.[4]

Riehl, as "an approved custodian of inmate grievance records[,]" would have been likely to have

discoverable information in support of Defendants' rebuttal of Plaintiff's claims regarding his

inability to fast or commune with other believers. ECF No. 52-1 at PageID #: 556. Defendants

were therefore required to supplement its disclosures with Riehl's identity "in a timely manner if

the party learns that in some material respect the disclosure or response is incomplete or

incorrect." *See* Fed. R. Civ. P. 26(e).

Defendants also had reason to know Grys was likely to have discoverable information.

ODRC revised its grooming policy, effective October 22, 2018, to restrict the wearing of locks

exceeding 1/2 inch in thickness. ECF No. 45 at PageID #: 406-07. In their brief in support of

---

[4] Additionally, by waiting until their reply brief to argue that Plaintiff failed to exhaust his administrative remedies, this argument is waived. *See Hunt v. Big Lots Stores, Inc.*, 244 F.R.D. 394, 397 (N.D. Ohio 2007) (declining to consider defendants' arguments raised for the first time in their reply brief); *Irwin Seating Co. v. Int'l Bus. Machines Corp.*, No. 1:04-CV-568, 2007 WL 518866, at *2 n.2 (W.D. Mich. Feb. 15, 2007) ("Moreover, the Sixth Circuit repeatedly has recognized that arguments raised for the first time in a party's reply brief are waived.").

their motion for summary judgment, Defendants argue that because "there is no evidence that [Plaintiff's] dreadlocks will exceed 1/2 inch without manipulation[,]" ODRC's revised policy moots Plaintiff's RLUIPA claim for prospective relief.  *Id.* at PageID #: 406-07.  By modifying the policy, Defendants knew, or should have known, that the thickness of Plaintiff's locks would be at issue in this case.  Defendants also knew that Grys, who has been employed by ODRC as a Barber Instructor for twenty years and had worked with "approximately a thousand inmates who wore dreadlocks[,]" could testify competently as to whether Plaintiff's locks could exceed 1/2 inch in thickness without manipulation, and therefore whether Plaintiff would be affected by the lock thickness restriction in ODRC's revised policy.  ECF No. 52-5 at PageID #: 599. Defendants accordingly should have timely supplemented their disclosures with Grys' identity.

Because Defendants have failed to justify their failure to identify Riehl or Grys in their disclosures or discovery responses, and because this failure arguably precluded Plaintiff from obtaining discoverable information from either affiant, the Court disregards the affidavits of Riehl and Grys and all references to their affidavits in Defendants' reply brief.

### b.  Non-Problematic Affidavits

Defendants, however, did not have reason to know that Hudson or Azmoun were likely to have discoverable information.  Defendants offer Hudson's affidavit to rebut Plaintiff's contention that the availability of newer technologies made ODRC's grooming policy unreasonable.  ECF No. 52-6 at PageID #: 600.  The issue of the feasibility of the implementation of technology to detect contraband in inmate hair could not have been ascertained from the face of Plaintiff's Amended Complaint, or from any document filed prior to Plaintiff's opposition to

Defendants' summary judgment motion. As for Azmoun, she is employed by ODRC as a Warden's Assistant. ECF No. 52-4 at PageID #: 592. She was asked to photograph Plaintiff's locks on April 5, 2019, after Plaintiff filed his opposition to Defendants' summary judgment motion. _Id._ Azmoun was not likely to have discoverable information regarding this matter until after the filing of Plaintiff's opposition.

Because Defendants were not required to identify either Hudson or Azmoun in their disclosures or discovery, the Court denies Plaintiff's motion as it relates to the affidavits of Hudson and Azmoun.

### 3. *Fetha Negast*

Defendants also attach excerpts from the *Fetha Negast*. Plaintiff argues that the Court should not consider them because they are hearsay, irrelevant, and unduly prejudicial. But, Defendants do not rely on the *Fetha Negast* as evidence of the truth of the matter asserted. Rather, they claim Plaintiff's claimed fasting restrictions do not find support in the *Fetha Negast*. ECF No. 52 at PageID #: 541-43. This is not hearsay. Nor is the text irrelevant. Plaintiff bases at least two of his requests for religious accommodation, in part, on the *Fetha Negast*. ECF No. 50-1 at PageID #: 488, 500. Finally, Plaintiff fails to explain how Defendants' reliance on the *Fetha Negast* is prejudicial, much less unduly prejudicial.

Accordingly, the Court denies Plaintiff's request to disregard Defendants' attached excerpts from the *Fetha Negast*.

## B. Motion for Summary Judgment

Defendants urge the Court to grant summary judgment as to all of Plaintiff's claims.

First, Defendants argue that Plaintiff's claims under RLUIPA are either barred or moot.

Additionally, Defendants contend that, because the revised grooming policy does not violate

RLUIPA, there is no ongoing violation for the Court to enjoin.  Moreover, Defendants contend

Plaintiff's Section 1983 claims for violations of the First and Fourteenth Amendments must fail

because ODRC's actions were rationally related to a penological interest, and Plaintiff fails to

show how he was subjected to discrimination on the basis of his religious beliefs.  Finally,

Defendants assert they are shielded by qualified immunity.

### 1. RLUIPA[5]

"Congress enacted RLUIPA . . . in order to provide very broad protection for religious

liberty."  *Holt v. Hobbs*, 135 S. Ct. 853, 859 (2015) (internal quotation marks omitted).  RLUIPA

provides, in relevant part:

> No government shall impose a substantial burden on the religious exercise of a
> person residing in or confined to an institution . . . even if the burden results from a

---

[5] Plaintiff cannot seek monetary damages under RLUIPA against either ODRC or
the individual defendants.  *Sossamon v. Texas*, 563 U.S. 277, 285-86 (2011) (RLUIPA
does not waive state's sovereign immunity against claims for monetary relief); *Haight v.
Thompson*, 763 F.3d 554, 568 (6th Cir. 2014) (no monetary damages under RLUIPA
against prison officials in their individual capacity).  Moreover, to the extent that Plaintiff
seeks relief under RLUIPA for any of his force-cuttings under ODRC's prior grooming
policy, his claims are moot.  *See Cardinal v. Metrish*, 564 F.3d 794, 798 (6th Cir. 2009)
(mooting plaintiff's RLUIPA claim for declaratory and injunctive relief after defendant
changed its policy).  The Court therefore limits its analysis to whether a genuine issue of
material fact exists as to whether Plaintiff can prevail on his claim for declaratory or
injunctive relief under RLUIPA as it pertains to ODRC's current grooming policy.

rule of general applicability, unless the government demonstrates that imposition of the burden on that person–

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

RLUIPA employs a burden shifting analysis.  A plaintiff bears the initial burden of proving that the policy at issue implicates his religious exercise.  *Holt*, 135 S. Ct. at 862.  This requires the plaintiff to show that the relevant exercise of religion is grounded in a sincerely held religious belief.  *Id.*  Additionally, a plaintiff must show that her exercise of her sincerely held religious belief is substantially burdened by the policy.  *Id.*  If the plaintiff makes each of these showings, the burden shifts to the defendant to show that the policy (1) was in furtherance of a compelling governmental interest and (2) was the least restrictive means of furthering that compelling governmental interest.  *Id.* at 863.

### a. Whether Plaintiff's Relevant Exercise of Religion is Grounded in a Sincerely Held Religious Belief

Plaintiff alleges that "[w]earing dreadlocks is a major tenet of [his] Rastafarian faith." ECF No. 32 at PageID #: 316.  Rastafarians believe that hair must grow and lock naturally without being cut.  *Id.*  Additionally, Rastafarians take the Nazarite vow, which require them to adhere strictly to the tenets of the religion, including the prohibition of the cutting of hair.  ECF No. 50 at PageID #: 455.

Defendants respond that Plaintiff's desire to wear locks without being required to cut them is not grounded in a sincerely held religious belief, claiming that "it appears that Plaintiff is no longer a Rastafarian, and, instead, has changed his religious affiliation to Islam." ECF No. 45 at PageID #: 411. In support, Defendants produce a "Request to Change Religious Affiliation" form completed by Plaintiff on April 11, 2018. ECF No. 45-2 at PageID #: 432. The form indicates that Plaintiff wishes to change his religious affiliation from Nyahbingi Rastafarianism to Islam. *Id.* The reason offered for the request was Plaintiff had been practicing Ramadan for the past 16 years. *Id.*

The evidence suggests that a possible dispute of material fact exists as to whether Plaintiff's sincerely held religious beliefs require him to grow his locks naturally. Plaintiff denies that he is Muslim. ECF No. 50-1 at PageID #: 473. He explains that he completed the Request to Change Religious Affiliation form only because ODRC did not permit him to fast as a Rastafarian. ECF No. 50 at PageID #: 453. In a notarized statement in support of an August 2016 Request for Religious Accommodation, Plaintiff wrote:

> Why does a Rasta like myself not able to observe or fast, I have to fast with the Muslims during Ramadan and observe in church on Sundays with the Christians. If I need assistance from T.C.I. as to my fasting and observance I have to get it with other religious observances not Rastafari. This is clearly discriminatory . . .

ECF No. 50-1 at PageID #: 474, 502-03. Finally, in their Responses to Plaintiff's Request for Admissions, served upon Plaintiff on July 30, 2018, Defendants admit "ODRC has no basis for disbelieving the sincerity of [Plaintiff's] belief in Rastafarianism." ECF No. 50-3 at PageID #: 527. Defendants have not amended their response to this request for admission. This suggests

that, despite Plaintiff's submission of his Request to Change Religious Affiliation form, Defendants do not seriously question the sincerity of Plaintiff's belief in Rastafarianism.

Plaintiff has accordingly met his burden for summary judgment in showing a triable issue of material fact as to whether his desire to wear locks without being required to cut them is grounded in a sincerely held religious belief, that is Rastafarianism.

### b. Whether ODRC's Grooming Policy Substantially Burdened Plaintiff's Exercise of Religion

Defendants argue that Plaintiff cannot establish that "the natural growth and locking of each of his individual dreadlocks, without manipulation, would exceed 1/2 inch in thickness[.]" ECF No. 45 at PageID #: 412. They therefore claim there is no genuine dispute whether ODRC's grooming policy burdens Plaintiff's exercise of his religious beliefs. *See id.*

In opposition, Plaintiff, through a sworn affidavit, claims that his locks naturally grow thicker than 1/2 inch, and that his locks will only grow thinner than 1/2 inch through manipulation. ECF No. 50-1 at PageID #: 476-77. It could be that Plaintiff, in the past, grew his locks to exceed 1/2 inch in thickness. This would establish the foundation for Plaintiff's knowledge that his locks naturally grow thicker than 1/2 inch. But Plaintiff does not state this. Plaintiff, in fact, provides no explanation of how he knows that his locks naturally grow thicker than 1/2 inch. Nonetheless, the Court is required to construe the evidence in the light most favorable to the party opposing summary judgment. *Perkins v. Harvey*, 368 F. App'x 640, 643 (6th Cir. 2010) ("The papers supporting the movant are closely scrutinized, whereas the

opponent's are indulgently treated.") (citing *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962)). Therefore, Plaintiff's affidavit, construed in the light most favorable to him, demonstrates his personal knowledge that his locks naturally grow thicker than 1/2 inch.

Plaintiff has accordingly met his burden in showing a genuine issue of material fact as to whether ODRC's grooming policy substantially burdened the exercise of his religious beliefs.

### c. Whether ODRC's Grooming Policy Furthers a Compelling Government Interest

Defendants' burden in showing that its grooming policy furthers a compelling government interest requires a "more focused" inquiry. *See Holt*, 135 S. Ct. at 863 (internal citations omitted). This requires Defendants to "demonstrate that the compelling interest test is satisfied through application of the challenged law to . . . the particular claimant whose sincere exercise of religion is being substantially burdened." *Id.* (internal quotation marks omitted).

Defendants contend that ODRC's grooming rule, as it applies to Plaintiff, furthers a compelling governmental interest in prison safety and security by ensuring the searchability of inmates' hair. ECF No. 45 at PageID #: 412. The Court agrees.

"[P]rison security is a compelling state interest," and requiring inmates to maintain searchable hair furthers that state interest. *See Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005); *see also Glenn*, 2018 WL 2197884, at *6 ("[T]he Court acknowledges that all states have security interests in the searchability of inmates' hair[.]"). Moreover, the interest is satisfied through the application of ODRC's grooming rule to Plaintiff. ODRC's grooming policy would

substantially burden the exercise of Plaintiff's religious beliefs only if his locks exceeded 1/2 inch in thickness, and, upon Plaintiff's request for an exemption for religious accommodation, if his hair was determined to be unsearchable after a particularized inquiry.

In response, Plaintiff claims Defendants have not met their burden in showing a compelling state interest, as it applies specifically to Plaintiff, in ensuring the searchability of his hair. He points out that ODRC has never found contraband in his hair, even though he has worn locks, while incarcerated, for years. ECF No. 50 at PageID #: 457-59. He also states that he is classified as a Level 2 security risk, the second lowest of five classifications. *Id.* at PageID #: 457.

But ODRC's security interest extends to the even-handed application of its grooming policy to all of its inmates. ECF No. 45-1 at PageID #: 427 ("[P]racticality, uniformity and ease in determining permitted hairstyles were intrinsic to the operation of the corrections system."); *see also Hoevenaar v. Lazaroff*, 422 F.3d 366, 371 (6th Cir. 2005) (relying on prison warden's testimony in finding a compelling interest in prohibiting individualized exceptions for low-threat prisoners to prison's restrictions on hair length).

Moreover, between 2004 and 2018, ODRC policy prevented inmates from wearing locks. ECF No. 52 at PageID #: 549. During that period of time, Plaintiff's locks were cut several times. ECF No. 32 at PageID #: 324. Between these force-cuts, Plaintiff had his locks "searched many times[.]" (ECF No. 50-1 at PageID #: 476). Because of ODRC's then-existing policy, Plaintiff and other inmates did not have the opportunity to conceal contraband in their hair. That ODRC's prior policy prevented inmates from hiding contraband in hair does not eliminate

ODRC's compelling interest in ensuring the searchability of the hair of inmates such as Plaintiff. *See Cutter*, 544 U.S. at 725 n.13; *Glenn*, 2018 WL 2197884, at *6.

### d. Whether ODRC's Grooming Policy Is the Least Restrictive Means of Furthering That Compelling Governmental Interest

"The least-restrictive means standard is exceptionally demanding," requiring the government to show that "it lacks other means of burden on the exercise of religion by the objecting party." *Holt*, 135 S. Ct. at 864 (quotations and alterations omitted). "[I]f a less restrictive means is available for the Government to achieve its goals, the Government must use it." *Id.* (quoting *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 815 (2000)) (quotation marks omitted). Policies of prisons in other jurisdictions are relevant, but not necessarily controlling, to the least restrictive means analysis. *Ware v. Louisiana Dep't of Corr.*, 866 F.3d 263, 269 (5th Cir. 2017).

ODRC's grooming policy permits inmates to wear braids or locks, provided that the thickness of each braid or lock does not exceed 1/2 inch. ECF No. 45-3 at PageID #: 433. This thickness was determined after ODRC "consider[ed] various objective criteria," resulting in the conclusion that locks not exceeding the 1/2 inch thickness limitation could be searched by "requir[ing] inmates to invert their heads and vigorously run their fingers through their hair while corrections officers conduct a visual inspection[.]" ECF No. 45-1 at PageID #: 428. Officers would also be able to detect any metal objects not detected through other search procedures using a handheld metal detector. *Id.* ODRC determined these methods of search, however, would not be effective on locks exceeding 1/2 inch in thickness. *Id.*

Plaintiff claims Defendants fail to produce any evidence to support the premise that a 1/2 inch limitation on the thickness of locks is the least restrictive way of promoting prison security. ECF No. 50 at PageID #: 459. This argument, however, misses the mark.

ODRC does not categorically forbid the wearing of all locks exceeding 1/2 inch in thickness under all circumstances. If any of the inmate's braids or locks exceeds 1/2 inch in thickness, the inmate may request an exemption from ODRC's grooming rule in order to accommodate a sincerely held religious belief. ECF No. 45-1 at PageID #: 428; ECF No. 45-3 at PageID #: 433. The exemption will only apply if the hair is determined to be searchable, despite the thickness of the lock, after a particularized inquiry. ECF No. 45-1 at PageID #: 428; ECF No. 45-3 at PageID #: 433. If prison officials, after conducting a particularized inquiry, determine that the inmate's hair is incapable of being searched, the offending braid or lock may be cut or combed out. ECF No. 45 at PageID #: 416.

It bears repeating that two things must happen before ODRC's grooming policy would impose a substantial burden on Plaintiff's religious beliefs. First, Plaintiff's locks must exceed 1/2 inch in thickness. Second, following Plaintiff's request for an exemption for religious accommodation, ODRC must, after conducting a particularized inquiry, determine that his hair was unsearchable. Only then would the enforcement of ODRC's grooming policy result in removal of an offending lock.

Defendants cite to the grooming policies of thirteen states and the District of Columbia, all of which similarly restrict the wearing of hair that is unsearchable or otherwise poses a security risk to the prison. ECF No. 45 at PageID #: 412-15. Policies of other jurisdictions are

"not necessarily controlling" but are relevant to the least restrictive means analysis. *Ware*, 866 F.3d at 269. So long as the inmate may request an exemption for religious accommodation, ODRC's grooming policy is directed at searchability, rather than other, more restrictive criteria. *Cf. Glenn*, 2018 WL 2197884, at *7 (finding ODRC's then-active grooming policy violated RLUIPA because it was "not directed at searchability and expressly prevent[ed] a prisoner from applying for a religious exemption."). Also, as Defendants note, there is no legal authority indicating prisons must permit inmates to maintain unsearchable hair as a religious accommodation.

Plaintiff additionally argues that Defendants fail to offer evidence that there are no alternative means by which ODRC could effectively search Plaintiff's hair, claiming that ODRC could manually search Plaintiff's hair or implement "newer technologies." ECF No. 50 at PageID #: 460-61. As discussed below, this argument is without merit.

Under ODRC's current policy, ODRC searches locks and braids by "requir[ing] inmates to invert their heads and vigorously run their fingers through their hair while corrections officers conduct a visual inspection[.]" ECF No. 45-1 at PageID #: 428. Any metal objects not detected through other search procedures may be detected through the use of a handheld metal detector. *Id.* Defendants, through the affidavit of ODRC Chief of the Bureau of Classification and Reception Brian Wittrup, aver that ODRC officials do not conduct manual searches of inmates' hair because it increases the ability of an inmate to harm the official conducting the search and places the official at risk of harm through contact with contraband in an inmate's hair. ECF No. 45-1 at PageID #: 428-29. Plaintiff claims this could be solved by "additional staff or other

security measures during the searching process."  ECF No. 50 at PageID #: 460.  He does not

explain what he means by "other security measures."  But additional staff would not eliminate

the risk inherent in standing immediately next to an inmate.  Nor would it mitigate the potential

harm an unsuspecting official may risk by physically running her fingers through an inmate's hair

and suffering injury caused by contact with a sharp object or weapon.

Plaintiff's argument that ODRC should have implemented "newer technologies" to search

inmates' hair is equally unavailing.  ODRC considered using body scanners in each of its prisons.

ECF No. 52-6 at PageID #: 600.  But ODRC decided against it, for several reasons.  First, the

body scanners emit radiation, and are therefore programmed such that they could only be used a

limited number of times on each inmate per year.  *Id.*  Relatedly, the body scanners raised

concerns regarding inmate health.  *Id.*  Finally, the cost of the body scanners, totaling over

$1,000,000, was prohibitive.  *Id.*  Plaintiff points to no other technology or methods Defendants

could have used in lieu of the procedures already in place.  *See Fowler v. Crawford*, 534 F.3d

931, 940 (8th Cir. 2008) (affirming district court's granting of summary judgment in favor of

defendants on RLUIPA claim when defendants explored "at least some alternatives" and plaintiff

failed to set forth specific facts showing a genuine issue for trial).

Accordingly, summary judgment is granted in favor of Defendants as to Plaintiff's claims

under RLUIPA.[6]

---

[6] To the extent Plaintiff alleges Defendants violate RLUIPA by refusing to
accommodate his requests for provision of an *ital* diet, fasting during specific holidays, or
communing with believers , those claims also fail.  Plaintiff has not shown he is

(continued...)

## 2. Constitutional Claims

Plaintiff also alleges entitlement to relief under 42 U.S.C. § 1983, claiming Defendants violated his constitutional rights under the Free Exercise Clause, the Establishment Clause, and the Equal Protection Clause.

### a. First Amendment Claims

Plaintiff's First Amendment claims are based on his challenge of ODRC's pre-*Glenn* grooming policy, resulting in a force-cut of his locks in November 2016, as well as his challenge of ODRC's post-*Glenn* grooming policy. ECF No. 50 at PageID #: 462-65.

"When a prison regulation substantially infringes on an inmate's First Amendment religious practices, 'the regulation is valid if it is reasonably related to legitimate penological interests.'" *Hayes v. Tennessee*, 424 F. App'x 546, 549 (6th Cir. 2011) (quoting *Turner v. Safley*, 482 U.S. 78, 79 (1987)).[7] Prison officials are accorded wide latitude and deference in the adoption and application of prison policies and procedures in this regard. *See Bell v. Wolfish*, 441 U.S. 520, 546–47 (1979); *see also Flagner*, 241 F.3d at 481 ("To ensure that courts afford

---

[6](...continued)
prohibited from dieting, fasting, or communing with other members in accordance with his religious beliefs. *See* ECF No. 45 at PageID #: 423-24; ECF No. 52-2 at PageID #: 566-67, 577-78.

[7] The Sixth Circuit "has not yet resolved the question of whether" courts should "look to *Turner* to determine whether prison officials violated the Establishment Clause or simply treat the policy as 'suspect' and 'apply strict scrutiny in adjudging its constitutionality.'" *Maye v. Klee*, 915 F.3d 1076, 1085 (6th Cir. 2019). Because both parties only brief the applicability of the *Turner* factors, and because the parties appear to treat both claims as one and the same in the summary judgment briefing, the Court applies *Turner* in its analysis of both of Plaintiff's First Amendment claims.

appropriate deference to prison officials, the Supreme Court has determined that prison regulations alleged to infringe constitutional rights are judged under a reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.") (internal quotations omitted).  "[B]ecause 'the problems of prisons in America are complex and intractable,' and because courts are particularly 'ill equipped' to deal with these problems, [courts] generally have deferred to the judgments of prison officials in upholding these regulations against constitutional challenge."  *Shaw v. Murphy*, 532 U.S. 223, 229 (2001) (quoting *Procunier v. Martinez*, 416 U.S. 396, 404-05 (1974)) (internal citation omitted). "Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities."  *Turner*, 482 U.S. at 85.

Because ODRC's post-*Glenn* grooming policy does not violate RLUIPA's more stringent inquiry, it also does not violate the First Amendment under *Turner*'s test of reasonableness.  *See Miller v. Wilkinson*, No. 2:98-CV-275, 2010 WL 3909119, at *5 (S.D. Ohio Sept. 30, 2010) (explaining that the rationale of the *Turner* test "applies equally to the RLUIPA test, which simply applies a heightened standard of scrutiny to inmate religious freedom claims"). Accordingly, ODRC's post-*Glenn* grooming policy cannot support Plaintiff's First Amendment claims.

Remaining are Plaintiff's First Amendment claims challenging ODRC's pre-*Glenn* grooming policy.  Defendants argue that, because ODRC's grooming policy, at the time of the most recent force-cut, was reasonably related to legitimate penological interests, the policy was therefore constitutionally valid.  ECF No. 45 at PageID #: 419-22.  In determining whether a

prison regulation is reasonably related to legitimate penological interests, the Sixth Circuit

considers the four *Turner* factors:

> "First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89, 107 S. Ct. 2254 (internal quotation marks and citation omitted). If this first factor is not met, "the regulation is unconstitutional, and the other factors do not matter." *Muhammad v. Pitcher*, 35 F.3d 1081, 1084 (6th Cir. 1994) (citing *Turner*, 482 U.S. at 89-90, 107 S. Ct. 2254). If, however, the first factor is met, we then balance the three remaining considerations: (1) whether alternative means of exercising the right remain open to prison inmates; (2) the impact that accommodation of the right would have on guards, other inmates, and on prison resources; and (3) "the absence of ready alternatives." *Turner*, 482 U.S. at 89-90, 107 S. Ct. 2254; see *Thompson*, 81 F. App'x at 566.

*Hanrahan v. Mohr*, 905 F.3d 947, 954 (6th Cir. 2018).

Under the first *Turner* factor, courts must determine whether "the governmental objective

underlying the regulations at issue is [1] legitimate and [2] neutral, and that [3] the regulations

are rationally related to that objective." *Id.* (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 414

(1989) (internal quotation marks omitted)).

There is little doubt that Defendants had a legitimate governmental objective in

promoting prison safety. *See Thornburgh*, 490 U.S. at 415. Nor is there any question as to

whether the grooming policy was neutral. ODRC's pre-*Glenn* policy categorically prohibited the

wearing of locks, without exception. ECF No. 32 at PageID #: 318-19.

"As for a rational connection between the policy and these interests, the issue is not

whether the prohibited materials have in fact caused problems or are even likely to cause

problems, but whether a reasonable official might think that the policy advances these interests."

*Hanrahan*, 905 F.3d at 958 (quotations omitted).  Under this standard, ODRC's former grooming policy was rationally related to promoting prison safety.  Defendants, through the affidavit of ODRC Chief of the Bureau of Classification and Reception Brian Wittrup, claim that, depending on "the overall length, quantity, and density" of an inmate's locks or braids, an inmate could conceal contraband or weapons in a manner that would make the inmate's hair difficult or dangerous to search.  ECF No. 45-1 at PageID #: 427.  A reasonable official could conclude that ODRC's prohibition on locks, by removing an avenue by which inmates could hide contraband or weapons, promoted prison safety.

The second *Turner* factor, whether alternative means of exercising the right remains open, also weighs in favor of Defendants.  ODRC's former grooming policy did not exclude all available means for the free exercise of religious beliefs.  The policy did not exclude inmates from accessing religious materials, observing a particular diet, or acquiring objects with ceremonial religious significance.[8]  And though Plaintiff attempts to narrowly define the right in question as the right to grow locks without prison interference, "the right in question must be viewed sensibly and expansively[.]" *Hanrahan*, 905 F.3d at 959 (quoting *Thornburgh*, 490 U.S. at 417).

The third and fourth *Turner* factors cut both ways.  On one hand, an accommodation of inmates' requests to grow locks would have, at some point, required ODRC staff to perform

---

[8] Plaintiff claims Defendants substantially burdened his ability to fast or commune with other believers.  ECF No. 50 at PageID #: 451.  ODRC's former grooming policy, however, was not the source of this alleged burden.

manual searches of inmate hair. Manual searches of inmate hair "increase[s] the tension between inmates and corrections officials because it places a corrections official in very close proximity to the inmate, and in a position where it is difficult to maintain visual contact with the rest of [the] inmate's person." ECF No. 45-1 at PageID #: 428. Moreover, manual searches put corrections officers at risk of injury from coming into physical contact with contraband or weapons lodged in the inmate's hair. *Id.*; ECF No. 45 at PageID #: 421. On the other hand, Defendants cannot say that, at the time of the November 2, 2016 force-cut, there were no ready alternatives to the grooming policy in place. Defendants could have modified its grooming policy, as they did after *Glenn*, to permit inmates to submit requests for exemption on the basis of their sincerely held religious beliefs.

Nonetheless, *Turner* does not require the application of a "least restrictive alternative" analysis. *Thornburgh*, 490 U.S. at 414. Rather, the touchstone of *Turner* is reasonableness. *Id.* On balance, ODRC's pre-*Glenn* grooming policy was reasonably related to ODRC's interests in prison security.[9]

Because ODRC's grooming policies, both before and after *Glenn*, reasonably relate to ODRC's interests in prison security, the Court finds Defendants are entitled to summary judgment on Plaintiff's First Amendment claims.

---

[9] The Sixth Circuit has consistently "upheld prison grooming standards concerning hairstyle" under *Turner*. *Luther v. White*, No. 5:17-CV-138, 2019 WL 511795, at *13 (W.D. Ky. Feb. 8, 2019) (collecting cases).

**b. Equal Protection Clause**

Plaintiff claims that Defendants treated him, as a Rastafarian, differently than adherents of other religions.  ECF No. 50 at PageID #: 466.  He avers Defendants permitted similarly situated individuals to wear locks or braids, while punishing him because of his Rastafarian beliefs.  Plaintiff also claims that Defendants purposefully discriminated against him on the basis of religion by prohibiting him from dieting, fasting, or communing with other members of his faith in accordance with his religious beliefs.  *Id.*

Under the Equal Protection Clause of the Fourteenth Amendment, a state may not "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const., amend. XIV, § 1.  In order to establish a violation of the Equal Protection Clause, a plaintiff must show he was subjected to disparate treatment as a result of intentional or purposeful discrimination.  *Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015).  When such a distinction "invades a fundamental right, such as speech or religious freedom, the law will be sustained only if it is suitably tailored to serve a compelling state interest."  *Maye v. Klee*, 915 F.3d 1076, 1086 (6th Cir. 2019) (quotations omitted).

Defendants contend Plaintiff fails to raise a genuine issue of material fact as to his claims of discrimination on the basis of religion under the Equal Protection Clause.  They argue that Plaintiff cannot demonstrate any instances in which non-Rastafarian inmates have been permitted to wear locks.  Additionally, they allege that Plaintiff has not shown how his alleged inability to fast for 180 days, consume an *ital* diet, or commune with other believers constitutes intentional or purposeful discrimination on the basis of religion.  ECF No. 45 at PageID #: 423.

In response, Plaintiff claims that "Defendants administer their grooming ARs in an arbitrary fashion—punishing inmates like [Plaintiff] for their religious beliefs—while leaving many other similarly situated inmates with their dreadlocks." ECF No. 50 at PageID #: 466. Plaintiff, however, points to no evidence in support. In his affidavit, he states that he "knows of other Rastafarians in ODRC facilities who currently have dreadlocks that are thicker than 1/2 inch." ECF No. 50-1 at PageID #: 477. This does not support the conclusion that he was treated differently on the basis of his religious beliefs.[10]

Plaintiff also asserts that "ODRC does not acknowledge Rastafarianism or provide specific accommodations for his dietary needs" but "provide[s] dietary and fasting accommodations for a plethora of other faiths." ECF No. 50 at PageID #: 466-67. Plaintiff, through his affidavit, states that Rastafarianism requires him to follow an *ital* diet, which prohibits the consumption of processed foods. ECF No. 50-1 at PageID #: 473. He also avers that "Rastafarianism requires [him] to fast on particular days throughout the year, and to celebrate religious holidays in worship services called 'groundings.'" *Id.*

Yet Plaintiff fails to provide evidence that Defendants purposefully discriminated against him by prohibiting him from dieting, fasting, or communing with other members of his faith in

---

[10] A plaintiff may also bring a "class of one" equal protection claim by alleging that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff's claims, however, solely rely on a theory that Rastafarians are treated differently from other Rastafarians. ECF No. 32 at PageID #: 335-36; ECF No. 50 at PageID #: 466-67.

accordance with his religious beliefs.[11]  He claims that "Rastafarianism requires [him] to find opportunities to eat and fast according to [his] religious beliefs" and "ODRC does not facilitate [his] particular diet or fasting on the days required by Rastafarianism." ECF No. 50-1 at PageID #: 473.  Yet Plaintiff only submitted four completed forms,[12] as required under ODRC policy, for religious accommodation since July 8, 2013.  ECF No. 52-2 at PageID #: 566-67.  Of those completed forms, only the August 27, 2018 submission indicates a request for fasting, a request for an *ital* diet, or a request for "grounding." *Id.* at PageID #: 567, 578.  In response, ODRC provided Plaintiff with a reasonable meal accommodation. *Id.* at PageID #: 577.  Plaintiff provides no evidence that he found the meal accommodation to be inadequate, or that he notified ODRC of his dissatisfaction of the meal accommodation. *See id.*  Moreover, Plaintiff's request "[t]o have grounding and observance of Holidays and Fast Days[,]" without more, provides no meaningful detail through which ODRC officials could have meaningfully evaluated the feasibility of granting his request. *Id.* at PageID #: 578.  Plaintiff has not shown that he was prohibited from practicing his religion on the basis of purposeful discrimination.

---

[11] To the extent Plaintiff's First Amendment claims are also predicated on his allegations that Defendants prohibited him from dieting, fasting, or communing with other members of his faith in accordance with his religious beliefs, they fail for the same reason.

[12] ODRC requires inmates to request religious accommodation through completion and submission of a form.  ECF No. 52-2 at PageID #: 566.  ODRC's screening of requests through this process conserves the prison's finite resources and protects the security of the institution. *Id.*  There is no evidence that this policy is motivated by a discriminatory purpose or intent. *See Abdullah v. Fard*, 173 F.3d 854, at *2 (6th Cir. 1999) (Table).

(4:17CV2409)

Accordingly, summary judgment is granted as to Plaintiff's claims under the Equal

Protection Clause.[13]

### IV.  Conclusion

For the foregoing reasons, Plaintiff's motion to strike (ECF No. 53) is granted in part.

The Court disregards the affidavits of Kelly Riehl and Rhonda Grys and all references to their

affidavits in Defendants' reply brief.  The motion is otherwise denied.  Defendants' motion for

summary judgment (ECF No. 45) is granted.


IT IS SO ORDERED.


  September 19, 2019                               /s/ Benita Y. Pearson
Date                                        Benita Y. Pearson
                                            United States District Judge

---

[13] Because there is no genuine issue of material fact as to whether any of the individually named Defendants violated Plaintiff's rights under the First or Fourteenth Amendments, the Court need not address the applicability of qualified immunity.