| | | |
|---|---|---|
| | SUBJECT:<br>**Institutional Religious Services** | PAGE  1  OF  7 . |
| | | NUMBER: **72-REG-01** |
| Ohio \| Department of Rehabilitation & Correction | RULE/CODE REFERENCE:<br>ORC 2317.02; AR 5120-9-44 | SUPERSEDES:<br>72-REG-01 dated 01/05/15 |
| | RELATED ACA STANDARDS:<br>4-4512 to 4-4517, 4-4520, 4-4521;<br>2-CO-5E-01, 2-CO-5E-02 | EFFECTIVE DATE:<br>**February 5, 2017** |
| | | APPROVED: |

I. **AUTHORITY**

This policy is issued in compliance with Ohio Revised Code 5120.01 which delegates to the Director of the Department of Rehabilitation and Correction the authority to manage and direct the total operations of the Department and to establish such rules and regulations as the Director prescribes.

II. **PURPOSE**

The purpose of this policy is to provide guidance to the operation of institutional religious services.

III. **APPLICABILITY**

The policy applies to all employees, independent contractors, and volunteers of the Ohio Department of Rehabilitation and Correction (DRC) who provide or assist in providing religious services.

IV. **DEFINITIONS**

**Clergy of Record** - Clergy having been identified by the offender as their current outside clergy member. The criteria for approval of such a minister are set forth in DRC policy 76-VIS-01, Inmate Visitation.

**Contract Religious Provider** - Clergy or lay person contracted by the DRC to provide faith-specific services or general religious support.

**Extended Restrictive Housing (ERH)** - Housing that separates an inmate from the general population and restricts the inmate to their cell twenty-two (22) hours or more per day for a period of thirty (30) days or longer.

**Institutional Chaplain** - A clergy person serving full-time in a religious capacity and employed by the Department.

**Institutional Ministry Team (IMT)** - The IMT is a group composed of the chaplain(s) and religious services contractors tasked with the institution's religious services programming.

**Limited Privilege Housing (LPH)** - Assignment of an inmate to a cell or other designated area for the purpose of separating them from other inmates, but is still considered general population. Designated out of cell time shall be more than two (2) hours daily. Inmates may participate in meaningful activities, programs, and recreational opportunities as deemed appropriate by the managing officer.

**Religious Services Provider** - A clergy or lay person, other than an inmate, qualified to lead congregate religious activities in accordance with the tenets, and practices of their faith. The religious services provider may be a contractor or a volunteer. An inmate may not act in this capacity.

**Restrictive Housing (RH)** - Housing that separates an inmate from the general population and restricts the inmate to their cell twenty-two (22) hours or more per day.

**Secure Adjustment Unit (SAU)** - A unit dedicated to the housing of inmates who have committed ERH qualifying offenses but are seriously mentally ill or intellectually developmentally disabled and, as such, cannot be placed into ERH 1, 2 or 3. These units offer security, programming and mental health services to ensure the inmate's conditions of confinement do not qualify as Restrictive Housing. Inmates may only be placed into an SAU with the approval of the Serious Misconduct Panel (SMP) or upon reception as outlined in section VI.A.1 of DRC policy 53-CLS-04, Extended Restrictive Housing (ERH).

**Serious Misconduct Panel (SMP)** - A panel of two (2) correctional staff who have been selected by a regional director and trained by Legal Services, who are authorized to conduct all misconduct hearings for offenses that would qualify for placement in ERH. The SMP makes decisions on culpability and makes recommendations for appropriate housing assignments based upon the results of the hearing. The panel must consist of two (2) individuals who are not employed in the same prison where the behavior leading to the recommendation for ERH placement occurred.

**Transitional Program Unit (TPU)** - A specialized housing unit requiring close supervision of inmates that are placed in Restrictive Housing, Extended Restrictive Housing, or may be placed in Limited Privilege Housing.

**Volunteer Coordinator** - The employee assigned by the managing officer to coordinate all volunteer matters at a specific facility.

**Witness** - Sharing information or personal faith about religious beliefs without an attempt to coerce another person into changing from one religious belief to another.

V. **POLICY**

It is the policy of the Ohio Department of Rehabilitation and Correction (DRC) to ensure that inmates, who wish to do so, may subscribe to any religious belief they choose. Inmate religious practices, as opposed to belief, may be subject to reasonable time, place and manner restrictions. Inmate participation in religious activities shall be voluntary. The opportunity for inmates to engage in particular religious practices shall be subject to the legitimate departmental or institutional interests and concerns, including security, safety, health, discipline, rehabilitation, order, and the limitations of and allocation of resources.

| SUBJECT: **Institutional Religious Services** | PAGE __3__ OF __7__ . |
|---|---|

## VI. PROCEDURES

### A. Institutional Chaplain

1. The Institutional Chaplain has the primary responsibility for the development and implementation of the professional-pastoral aspect of the chaplaincy at his/her institution under the guidance of the religious services administrator. The Institutional Chaplain's duties are set forth in greater detail in the Religious Services Manual. Institution religious services shall conform to the additional guidelines set forth in the manual.

2. Institutional Chaplains function as religious professionals within the correctional setting and shall not undertake or be required to undertake roles that are contrary to that of a spiritual provider. Such prohibited duties include: serving on the Rules Infraction Board (RIB) or Serious Misconduct Panel (SMP), Security Threat Group Team membership (except in a purely advisory manner), conducting strip searches and cell searches, Special Response Team membership, etc. All religious staff members are exempt from firearms use, training, and instruction. Institutional Chaplains are not exempt from unarmed self-defense training.

3. Utilizing professional discretion, Institutional Chaplains shall have an advisory role in relation to security staff such as providing information on various religious groups' customs, burial procedures, and dietary needs.

4. Institutional Chaplains provide for the spiritual needs of all requesting offenders regardless of faith preference or lack thereof. However, they are not required to compromise the fundamental tenets of their own faith.

5. The Institutional Chaplain shall maintain items that will be used for congregate services in the religious services area. These items shall be secured and accessible for scheduled services. Additional congregate property may be brought into the facility by an approved religious leader or contract chaplain with prior authorization. Requests for additional congregate items must be made through the religious accommodation process as set forth in DRC policy 72-REG-02, Religious Accommodations.

6. The Institutional Chaplain/designee shall develop and maintain close relationships with religious resources in the community.

### B. Institutional Religious Services

1. The managing officer shall designate a deputy warden to provide administrative supervision of religious services. The Institutional Chaplain(s) shall administer and supervise the religious service program in consultation with the religious services administrator.

2. The religious services administrator shall ensure staff who have direct contact with inmates are given training regarding religious practices.

| SUBJECT: **Institutional Religious Services** | PAGE 4 OF 7 . |
|---|---|

3. The work of the chaplains and the operation of the religious services program necessitate the following provisions:

    a. Unless precluded by the managing officer for specific security reasons, the Institutional Chaplain shall have access to all areas of the institution including the TPU, ERH, SAU, and RTU units. Institutional Chaplains shall make weekly visits to TPUs, ERH, SAUs, and special housing such as infirmary, RTU, or protective custody. Visits to Restrictive Housing inmates shall be documented on the Restrictive Housing Program Staff Activity Log (DRC4112) located in the unit.

    b. The institution shall designate building space for worship services, classes, small groups, and offices. Staff shall consider the religious concerns of others when using religious services space for non-religious purposes. Items and fixtures used in religious rituals must always be handled with care and with consideration for the religious nature of these items.

    c. The institution shall provide access to non-inmate clerical support. Volunteers may provide support to assist the chaplain with office tasks and special projects.

4. All inmates shall be afforded access to religious services subject to legitimate departmental or institutional interests and concerns including security, safety, health, discipline, rehabilitation, order, and the limitations of and allocation of resources

    a. Congregate activities such as worship services, prayer services, study classes, etc., must be led by, or under the immediate control of, a chaplain or approved religious services provider.
    b. No purely religious event shall be made mandatory.
    c. The eligibility of an inmate to participate in the religious observances of a particular faith group shall be determined according to the faith requirements of that religious faith group.
    d. The specific process for inmate requests for religious accommodations is addressed in DRC policy 72-REG-02, Religious Accommodations.

5. The religious services administrator shall ensure inmates are not subject to coercion, harassment, or ridicule due to religious affiliation.

6. Religious activities may be suspended for all or a portion of the inmate population of an institution when continued conduct of such activities threatens the security and good order of the institution. Such events include, but are not limited to, a general emergency, a security lockdown, and when mixing of different security levels must be prevented.

7. Inmates may be denied access to specific religious services if they have engaged in a pattern of disruptive activity in the service on prior occasions. Possession of or access to religious items may be restricted when the use of those items has threatened or may likely threaten the security and good order of the institution.

8. Witnessing as defined in this policy is allowed.

DRC 1362

*Defendants' Trial Ex. 1-4*

DRC000241

| SUBJECT: **Institutional Religious Services** | PAGE __5__ OF __7__ . |
|---|---|

C. **Contract Religious Providers**

    1. Selection of a contract religious provider shall ensure coverage for the largest religious catchments in the facility.

    2. The securing, hiring, and supervision of appropriate contract religious providers shall be the responsibility of the assigned deputy warden, in consultation with the religious services administrator. The deputy warden may designate an Institutional Chaplain as the contract monitor for a religious contractor to provide reports and serve as an informal point of contact.

    3. All contract religious providers shall be advised that they should appeal to the broadest range of adherents in the faith group. They should emphasize the common, fundamental teachings of the faith. A contract religious provider shall not serve as clergy of record for any inmate at the institution at which they are serving. An exception is death row inmate(s). Death row inmates may select any person as their clergy of record, to include any contract clergy person, volunteer, relative and/or any person that functions in the role of a clergy person.

    4. When the full time Institutional Chaplain is absent for the normal weekly worship, a contract religious provider may conduct the regular weekly worship service. If no contractor is available, a substitute clergy from the community will be contracted to provide the worship service. Such clergy shall be paid at rates set by the religious services administrator, and in accordance with Administrative Regulation 5120-9-44, Clergy Substitute for Regular Full-Time State Employed Clergy.

D. **Institution Ministry Team**

    1. The purpose of the Institution Ministry Team (IMT) is to facilitate the clear and timely communication of information and directives.

    2. The IIMT is comprised of the Institutional Chaplain and contract religious providers. The IMT shall review and evaluate all areas of the religious services program including the work of religious volunteers. The Institutional Chaplain shall serve as the IMT team leader. The leadership of the IMT may be rotated between the Institution Chaplains at the discretion of the managing officer/designee.

    3. The IMT shall meet at a minimum two (2) times per year. Long-standing volunteers with regular responsibilities may, at the direction of the IMT team leader, attend team meetings to add their perspective.

    4. The IMT shall set annual objectives for improving the delivery of services. These objectives shall be determined at a team meeting held in the 3rd or 4th quarter of the fiscal year.

    5. The IMT shall submit to the religious services administrator from this meeting an Annual Report of Objectives for the coming fiscal year (starting July 1st), due no later than June

| SUBJECT: **Institutional Religious Services** | PAGE 6 OF 7 . |
|---|---|

15th of that year. The team shall report specific goals and action steps, including any obstacles and significant needs that require attention.

E. **Religious Volunteers**

1. The Institutional Chaplain, in consultation with other religious staff and the managing officer/designee, shall determine how and when to utilize the services of religious volunteers.

2. Institutional staff wishing to serve as religious volunteers must submit a request to the Institutional Chaplain describing what volunteer services they want to provide. The Institutional Chaplain shall submit a recommendation to the managing officer for final approval. Once approved, the employee shall be entered into DOTS Portal under the volunteer section by the Volunteer Coordinator. They will serve under the religious and program supervision of the Institution Chaplain. Staff volunteering to preach at worship may only do so at facilities where they are not employed.

3. Volunteers shall be recruited to assist in religious programs. Approval of volunteers is subject to DRC policy 71-SOC-01, Recruitment, Training, and Supervision of Volunteers for Institutions. The role and involvement of these volunteers shall be at the discretion of the Institution Chaplain(s) with approval of the managing officer/designee. Institutional Chaplains shall provide consultation to volunteers in every aspect of their ministry. Volunteers shall report issues of concern to the institutional chaplain and maintain clear lines of communication at all times.

4. Volunteers shall be informed that in all of their teaching they are to appeal to the broadest possible range of persons in the faith group. Sectarian distinctions are to be avoided by appealing instead to the common, fundamental teachings of the faith. Questions that may generate controversy shall be referred to the Institutional Chaplain(s).

5. All religious volunteers shall have proper religious and security oversight. Volunteers shall conduct services or programs with oversight as specified in DRC policy 71-SOC-01, Recruitment, Training, and Supervision of Volunteers.

F. **Clergy Privileged Communications**

1. All clergy serving within the DRC (chaplains, contractors, and clergy volunteers) shall be advised that the professional expectations for clergy regarding confidentiality are honored in accordance with Ohio Revised Code 2317.02, Privileged Communications, Section C.

2. In no case shall clergy be compelled to divulge communication with an inmate when one or more of these conditions apply:

   a. The communication takes place in the context of a formal confession of sin;
   b. The statements of the inmate are retrospective in nature and not a communication relating plans to harm self or others; or

      c.  There is reason to believe that divulging the substance of the communication will irreparably harm the clergy person's ability to carry out their duties or is a violation of a sacred trust.

   3.  Clergy have a positive duty to report any communication from an inmate detailing plans to harm themselves or others, or another person's plans to harm themselves or others.

**G.**   **Clergy of Record**

Inmates may receive visits from their clergy of record as provided in DRC policy 76-VIS-01, Inmate Visitation.

**Related Department Forms:**

Restrictive Housing Program Staff Activity Log       DRC4112